## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                :
                                        :
        Plaintiff,                 :
                                        :
       v.                          :   Civil No. 3:02 CV 889 (EBB)
                                        :
277 DIAMONDS VALUED AT                  :
APPROXIMATELY $2,461,093.00, et al.     :
                                        :
Defendants.                             :

### MEMORANDUM IN OPPOSITION TO THE RECEIVERS'
### MOTION FOR PROTECTIVE ORDER

This Court should deny the Receiver-Claimants' Motion for Protective Order Staying

Certain Discovery Pending Resolution of Receiver-Claimants' Motion to Dismiss Claims of

Peoples Benefit Life Insurance Company, Veterans Life Insurance Company, Huff-Cook, Inc.

and Settlers Life Insurance Company.  For the reasons set forth in the Motion for Limited

Abstention Pending a Ruling on the State Law Question by the Mississippi Supreme Court and

Memorandum in Opposition to the Receivers' Motion to Dismiss and in Support of the Motion

for Limited Abstention Pending a Ruling on the State Law Question by the Mississippi Supreme

Court, which are incorporated herein by reference, the Receivers' Motion for Protective Order

should be denied.

Furthermore, in violation of Rule 26(c) of the Federal Rules of Civil Procedure, the

Receivers failed to meet and confer with counsel for Peoples Benefit Life Insurance Company

("Peoples"), Veterans Life Insurance Company ("Veterans"), and Huff-Cook, Inc., in the right of

and on behalf of Settlers Life Insurance Company or, in the alternative, Settlers Life Insurance

Company on its own behalf ("Settlers"), prior to filing their motion.  The motion may be denied

on that basis alone.

**Oral Argument Requested**

Finally, these cases are set for trial beginning September 9, 2005. Although a limited modification as requested in Settlers, Peoples, and Veterans' Motion for Limited Modification of Scheduling Order is necessary, any substantial delay in discovery should be avoided, so as to hold the trial date set by this Court at the request of the Receivers and the United States Attorney.

I.    **This Case Should Proceed To Trial on September 9, 2005 as Provided in this Court's December 16, 2004 Scheduling Order**

On December 10, 2004, the Receivers asked this Court to try the dispute between the Receivers and Settlers, Peoples and Veterans regarding who is the rightful owner of the assets in two of the Frankel-generated forfeiture cases. With the help of the United States Attorney's office, all parties agreed to a scheduling order. That order provided deadlines for discovery, expert disclosure, dispositive motions and set this matter is set for trial on September 9, 2005. Although the Receivers have been aware of the basis for their Motion to Dismiss for more than a year -- the Mississippi state court entered its summary judgment order on February 3, 2004 -- the Receivers agreed to the scheduling order allowing discovery in these cases and setting a discovery deadline of April 1, 2005.

The Mississippi summary judgment order is on appeal. The Mississippi Supreme Court has set oral argument for April 5, 2005. Settlers, Peoples and Veterans have asked this Court to abstain from ruling on the Receivers' Motion to Dismiss pending a definitive ruling by the Mississippi Supreme Court on the state law question of whether a victim of a fraudulently induced transaction perpetrated by an insolvent insurance company can recover its property through a constructive trust will therefore be settled shortly.

The delay caused by the stay in discovery requested by the Receivers may result in pushing the September trial date back several months, unless any stay is narrow in scope and

brief in duration. The best use of judicial resources and the best way to achieve a comprehensive, efficient disposition of litigation is to stay any ruling on the Receivers' Motion to Dismiss, deny the Receivers' Motion for Protective Order and allow these cases to proceed to trial on September 9, 2005.

## II.  The Receivers Did Not Meet and Confer Prior to Filing Their Motion

Under Rule 26(c) and Local Rule 37(a)(2), a party seeking a protective order must certify that the movant has in good faith conferred or attempted to confer with the other party in an effort to resolve the dispute and must attach an affidavit to the motion certifying that he or she has conferred with opposing counsel. Fed.R.Civ.P. 26(c); Local Rule 37(a)(2). The Receivers did not make any attempt to confer with counsel for Peoples, Veterans and Settlers and, therefore, could not attach the required certification. For this reason, the Receivers' motion should be denied. *Palumbo v. Shulman*, No. 97 CIV 4314, 1998 WL 720668, *2 (S.D.N.Y. Oct. 13, 1998); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99-100 (S.D.N.Y. 1997).

## III.  The Balance of Prejudices Weighs Heavily in Favor of Allowing Discovery

A stay of discovery is not appropriate simply on the basis that a motion to dismiss has been filed. *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M21-95, 2002 WL 88278, *1 (S.D.N.Y. Jan. 22, 2002). The Court should weigh the breadth of discovery and the burden of responding to it as well as the prejudice to the party opposing the stay. *Id.* The burden is on the Receivers to establish "good cause" for staying discovery. Fed.R.Civ.P. 26(c). In the present case, the discovery requests, depositions and requests for admissions are very narrowly tailored and place little or no burden on the Receivers. In fact, far from burdening or prejudicing the Receivers, much of the discovery and admissions requested by Peoples, Veterans and Settlers are information and facts that the Receivers themselves need to establish in order to prove their own claims to the forfeited funds.

3

For example, the Receivers have asserted constructive trust claims for the forfeited funds. *See, e.g.,* Answer and Defenses of First National Life Insurance Company of America, et al. at 9-10.  Before a constructive trust may be imposed a claimant must establish four elements: (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer made in reliance on that promise; (4) and unjust enrichment.  *ESI, Inc. v. Coastal Power Production Co.*, 995 F.Supp. 419, 436 (S.D.N.Y. 1998).  A party seeking to recover property through a constructive trust must be able to trace the property to the funds subject to the construct trust. *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001).  Thus, to recover under their constructive trust claims, the Receivers must prove that the forfeited funds were obtained by Martin Frankel through fraud and that the funds obtained by fraud are traceable to these forfeiture cases.

The Requests for Admissions served upon the Receivers simply trace funds from Settlers, Peoples, and Veterans' bank accounts to First National Life Insurance Company of America's ("FNL") account at First Tennessee Bank, on to the Frankel controlled account at Banque SCS Alliance and then to these forfeiture proceedings.[1]  With the possible exception of the initial transfer from Settlers, Peoples, and Veterans' bank accounts to FNL's First Tennessee Bank account, the Receivers must be able to prove the exact same transfers identified in the Requests for Admissions to prove their own constructive trust claims in these cases.  Therefore, there is no burden on the Receivers in admitting facts they themselves must prove in order to establish their own claims.  In fact, the Receivers have already admitted in these very forfeiture proceedings that many of the transfers identified in the Request for Admissions occurred.  *See United States v. 277 Diamonds*, No. 3:02 CV 889, Answer and Defenses of First National Life Insurance

---

[1] The Requests for Admissions served on each of the Receivers are identical.  A representative copy of one of the Requests for Admissions is attached hereto as Exhibit A.

Company of America, et al. at ¶¶ 37, 43-46; *United States v. $29,035,500.00*, No. 3:01 CV 1515, Answer and Defenses of First National Life Insurance Company of America, et al. at ¶¶ 39, 44-47, 54.

The Receivers also need to take discovery from many of the same witnesses Settlers, Peoples, and Veterans seek to depose in their Motion for Leave to Take Depositions of Federal Prisoners filed with this Court on March 16, 2005. The fraudulent scheme that resulted in millions of dollars being sent to the Frankel controlled Banque SCS Alliance account in Switzerland was masterminded by Frankel with the assistance of John Hackney, Gary Atnip, Sonia Howe, Karen Timmins and others. The testimony of these witnesses will help establish that the forfeited funds were taken by fraud.

The Requests for Production of Documents are narrowly tailored and would impose a minimal burden on the Receivers.[2] The Receivers have been engaged in litigation around the country against numerous parties alleged to have been involved with the fraud perpetrated by Frankel, Hackney, Atnip and others. They have reviewed and indexed both their own documents and documents recovered from the Frankel controlled insurance companies. Identifying and producing responsive documents in their indices is not burdensome.

WHEREFORE, for the foregoing reasons, the Receiver-Claimants' Motion for Protective Order Staying Certain Discovery Pending Resolution of Receiver-Claimants' Motion to Dismiss Claims of Peoples Benefit Life Insurance Company, Veterans Life Insurance Company, Huff-Cook, Inc. and Settlers Life Insurance Company should be denied, or, limited in scope and brief in duration so as to avoid any adjournment of the September 9, 2005 trial date set by the Court.

---

[2] The Requests for Production of Documents served on each of the Receivers are identical. A representative copy of one of the Request for Production of Documents is attached hereto as Exhibit B.

Dated:  March 17, 2005

Respectfully submitted,

PEOPLES BENEFIT LIFE INSURANCE
COMPANY, VETERANS LIFE
INSURANCE COMPANY, HUFF-COOK,
INC.

_____
Forrest B. Lammiman (CT 21508)
Randall A. Hack (CT 14314)
Brian I. Hays (CT 21601)
LORD, BISSELL & BROOK LLP
115 S. LaSalle Street
Chicago, IL 60603
Telephone:  (312) 443-0700
Facsimile:  (312) 443-0336

6

Brian I. Hays, an attorney, hereby certifies that on March 17, 2005, a true and correct

copy of the foregoing **MEMORANDUM IN OPPOSITION TO THE RECEIVERS'**

**MOTION FOR PROTECTIVE ORDER** was served facsimile and US Mail, postage pre-paid

to the following:

| | |
|---|---|
| **Plaintiff U.S.A.**<br>John Hughes<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>157 Church Street<br>P.O. Box 1824<br>23rd Floor<br>New Haven, CT   06510<br>(203) 821-3700 | |
| **Claimants**<br>James A. Lenes, Esq.<br>Douglas S. Skalka, Esq.<br>Neubert, Pepe, Monteith<br>195 Church Street<br>13th Floor<br>New Haven, CT   06510-2026<br>(203) 821-2000 | Susan Loving, Esq.<br>Lest, Loving & Davies<br>1701 South Kelly<br>Edmund, OK   73013 |
| Andrew B. Campbell, Esq.<br>Graham Matherne, Esq.<br>Wyatt Tarrant & Combs<br>2525 West End Avenue<br>Suite 1500<br>Nashville, TN   37203<br>(615) 244-0020 | Charles G. Copeland, Esq.<br>Copeland, Cook, Taylor & Bush, P.A.<br>1062 Highland Colony Parkway<br>Suite 200<br>P. O. Box 6020<br>Ridgeland, MS   39157 |
| Douglas J. Schmidt, Esq.<br>Blackwell Sanders Peper Martin, LLP<br>2300 Main Street<br>Suite 1000<br>Kansas City, MO   64108 | |

Brian I. Hays

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA            :
                                    :
            Plaintiff,              :
                                    :
    v.                              :          Civil No. 3:01 CV 1515
                                    :          (EBB)
$29,035,500 IN ACCOUNT NUMBER       :
20X6875(06), HELD IN THE NAME OF U.S. :
CUSTOMS SUSPENSE ACCOUNT AT THE     :
FEDERAL RESERVE BANK OF NEW         :
YORK, et al.                        :
                                    :
            Defendants.             :
--------------------------------------------------    ----------------    ------------------------------------

UNITED STATES OF AMERICA            :
                                    :
            Plaintiff,              :
                                    :
    v.                              :          Civil No. 3:02 CV 889 (EBB)
                                    :
277 DIAMONDS VALUED AT              :
APPROXIMATELY $2,461,093.00, et al. :
                                    :
            Defendants.             :

**HUFF-COOK, INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY AND VETERANS LIFE INSURANCE COMPANY'S FIRST REQUEST FOR ADMISSIONS FROM FRANKLIN AMERICAN LIFE INSURANCE COMPANY**

TO:    Andrew B. Campbell
       Wyatt, Tarrant & Combs
       2525 W. End Ave.
       Suite 1500
       Nashville, TN 37203

HUFF-COOK, INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY AND

VETERANS LIFE INSURANCE COMPANY (collectively, "PVS"), by their attorneys, Forrest

B. Lammiman, Randall A. Hack, Brian I. Hays and David N. Rosen, submit the following

Requests for Admission, pursuant to Rule 36 of the Federal Rules of Civil Procedure, to Paula A.



EXHIBIT

A

Flowers, Receiver and Liquidator of Franklin American Life Insurance Company ("Receiver"). PVS requests that Receiver respond to each request separately, fully, in writing, and under oath within 30 days of service hereof.

To the extent that any answer to these Requests may at any time be incomplete or incorrect due to information acquired by Receiver subsequent to the filing of its answers, PVS requests that Receiver promptly serve and file supplemental answers reflecting the complete and correct information, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## I.    INSTRUCTIONS

Please comply with the following instructions:

1.    To the extent that you believe any of the Requests are objectionable, answer so much of the Request as is not objectionable and separately state the portion of each Request to which you object and the grounds or basis for the objection.

2.    To the extent that you believe any of the Requests call for the production or disclosure of information that you consider to be protected by a privilege, answer so much of the Request as is not objectionable and produce a privilege log indicating, for each document, communication, or other piece of information as to which you contend is protected by a privilege:  (i) the nature of the document, communication, or other piece of information (e.g., letter, notes, memorandum, telephone conversation, meeting, etc.), (ii) identify the date the document was created, the communication occurred, or the information was generated; (iii) describe, in general, the subject matter of the document, communication, or information; (iv) identify the individual and/or entity to whom it pertains; (v) identify the persons who authored, wrote, signed, dictated, said or otherwise participated in the creation of the document, communication or information; (vi) identify all persons who received or heard an original or copy of each such document, communication or information; (vii) state the privilege you believe

2

protects the document, communication or information from disclosure and the basis for your

contention that the document, communication or information is subject to that privilege.

## II. REQUESTS FOR ADMISSION

Admit or deny each of the following requests for admissions:

**Request No. 1:**   Banque SCS Alliance Account No. 70026 ("Account No. 70026") was held in the name of Bloomfield Investments, Ltd.

**Response:**

**Request No. 2:**   Martin Frankel ("Frankel") opened Account No. 70026 on or about July 1, 1992.

**Response:**

**Request No. 3:**   Frankel incorporated and controlled Bloomfield Investments, Ltd.

**Response:**

**Request No. 4:**   Frankel was authorized to make deposits and withdrawals from Account No. 70026.

**Response:**

**Request No. 5:**   On December 24, 1997, Frankel gave Kaethe Schuchter a power of attorney authorizing her as an additional person authorized to approve deposits and withdrawals from Account No. 70026.

**Response:**

**Request No. 6:**   Frankel owned and controlled Devonshire Technologies, Ltd.

**Response:**

**Request No. 7:**   Frankel was the President and Secretary of Devonshire Technologies, Ltd.

**Response:**

**Request No. 8:**   Dreyfus Cash Management Account No. 719-079-1438435 at the Bank of New York Account No. 8900052252 ("BONY Account") was held in the name of LNS Inc.

**Response:**

3

**Request No. 9:**    The BONY Account was opened on July 29, 1998 by a caller identifying himself as Eric Stevens.

**Response:**

**Request No. 10:**    Eric Stevens was a pseudonym used by Frankel.

**Response:**

**Request No. 11:**    All funds deposited into the BONY Account were instructed to be transferred to UBS AG (then, Swiss Bank Corp.) Account No. 101-WA 206626-000 ("UBS Account") for final deposit in Account No. 70026.

**Response:**

**Request No. 12:**    The UBS Account was held in the name of Banque SCS Alliance SA.

**Response:**

**Request No. 13:**    On November 6, 1998, Peoples Benefit Life Insurance Company ("Peoples") and Veterans Life Insurance Company ("Veterans") transferred $7,287,504.00 from First National Bank of Maryland Account No. 89487248 ("P&V Account") to First Tennessee Bank Account No. 100057727.

**Response:**

**Request No. 14:**    First Tennessee Bank Account No. 100057727 was held in the name of First National Life Insurance Company of America.

**Response:**

**Request No. 15:**    On November 10, 1998, $5,000,000.00 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account.  TN 48199, 48204

**Response:**

**Request No. 16:**    On November 17, 1998, $5,000,000 was transferred from the BONY Account to the UBS Account for further credit to Account No. 70026.

**Response:**

**Request No. 17:**    On November 17, 1998, $5,004,936.51 was transferred from the BONY Account to Account No. 70026 receipt from "Dreyfus Cash Management Plus Inc."

**Response:**

**Request No. 18:**     On January 19, 1999, Peoples and Veterans transferred $2,134,101.00 from the P&V Account to First Tennessee Bank Account No. 100057727.

**Response:**

**Request No. 19:**     On January 20, 1999 $2,134,000.00 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account.

**Response:**

**Request No. 20:**     On February 25, 1999, Peoples and Veterans transferred $5,267,988.00 from the P&V Account to First Tennessee Bank Account No. 100057727.  TN 48201, 48209, AEG 599

**Response:**

**Request No. 21:**     On March 2, 1999, $5,400,000.00 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account.

**Response:**

**Request No. 22:**     On March 11, 1999, $7,553,786.84 was transferred from the BONY Account to Account No. 70026.

**Response:**

**Request No. 23:**     On March 26, 1999, $3,000,000.00 less correspondence charges was transferred from Account No. 70026 to Bank Leumi Account No. 0102931920.

**Response:**

**Request No. 24:**     Bank Leumi Account No. 0102931920 was held in the name of World Wide Diamonds.

**Response:**

**Request No. 25:**     The foregoing March 26, 1999 transfer to Account No. 0102931920 was authorized by Frankel.

**Response:**

**Request No. 26:**     On April 1, 1999, $2,000,050.62 less correspondence charges was transferred from Account No. 70026 to Bank Leumi Account No. 0102931920.

**Response:**

**Request No. 27:**      Bank Leumi Account No. 0102931920 was held in the name of Robert A. Weiner d/b/a World Wide Diamonds.

**Response:**

**Request No. 28:**      On April 1, 1999, $1,999,985.00 was credited to Bank Leumi Account No. 01029319 held in the name of Robert A. Wiener d/b/a Worldwide Diamond Co. for the benefit of Devonshire Technologies, Ltd.

**Response:**

**Request No. 29:**      The foregoing amount transferred to Bank Leumi Account No. 01029319 on April 1, 1999 was used to purchase diamonds from Robert A. Wiener d/b/a Worldwide Diamond Co.

**Response:**

**Request No. 30:**      Frankel placed the order for the purchase of diamonds with the foregoing funds transferred from Account No. 70026 to Bank Leumi Account No. 01029319.

**Response:**

**Request No. 31:**      At least a portion of these diamonds were seized by the United States government and became subject to a civil forfeiture action pending before Judge Burns in the United States District Court for the District of Connecticut entitled, United States v. 277 Diamonds, Civil No. 3:02 CV 889 (EBB).

**Response:**

**Request No. 32:**      On April 6, 1999, $16,000,050.41 less correspondence charges was transferred from Account No. 70026 to Farmers & Merchants Bank Account No. 01069446.

**Response:**

**Request No. 33:**      Farmers & Merchants Bank Account No. 01069446 was held in the name of Monex Deposit Company.

**Response:**

**Request No. 34:**      The foregoing amount transferred to Farmers & Merchants Bank Account No. 01069446 was made by order of Devonshire Technologies Limited.

**Response:**

6

**Request No. 35:**    The foregoing April 6, 1999 transfer to Account No. 01069446 was used to purchase Austrian Vienna Philharmonic .9999 fine gold coins.

**Response:**

**Request No. 36:**    Frankel placed the foregoing order for the Austrian Vienna Philharmonic .9999 fine gold coins from Monex Deposit Company using the funds transferred from Account No. 70026 to Farmers & Merchants Bank Account No. 01069446.

**Response:**

**Request No. 37:**    On April 9, 1999, Settlers Life Insurance Company transferred a total of $44,795,476 from First Union Accounts No. 5056681511 ($18,795,476) and No. 5056492342 ($26,000,000) to First Tennessee Bank Account No. 100057727.

**Response:**

**Request No. 38:**    On April 9, 1999  $44,795,000 was transferred from First Tennessee Bank Account No. 100057727 to the BONY Account.

**Response:**

**Request No. 39:**    On April 12, 1999, $44,812,640.49 was transferred from the BONY Account to the UBS Account for further credit to Account No. 70026.

**Response:**

**Request No. 40:**    On April 13, 1999, $44,812,640.49 was credited to Account No. 70026 from the BONY Account.

**Response:**

**Request No. 41:**    Prior to the foregoing April 13, 1999 transfer, Account No. 70026 had a balance of $389,687.47.

**Response:**

**Request No. 42:**    On May 3, 1999, $10,000,049.29 less correspondence charges was transferred from Account No. 70026 to Bank Leumi Account No. 01029319 held in the name of Robert A. Wiener d/b/a Worldwide Diamond Co.

**Response:**

**Request No. 43:**    The foregoing May 3, 1999 transfer to Bank Leumi was by order of Devonshire Technologies, Ltd.

**Response:**

**Request No. 44:**    The foregoing May 3, 1999 transfer to Bank Leumi was authorized by Frankel.

**Response:**

**Request No. 45:**    On May 3, 1999, $9,999,985.00 was credited to Bank Leumi Account No. 01029319 held in the name of Robert A. Wiener d/b/a Worldwide Diamond Co. for the benefit of Devonshire Technologies, Ltd.

**Response:**

**Request No. 46:**    The foregoing amount transferred to Bank Leumi Account No. 01029319 was used to purchase diamonds from Robert A. Wiener d/b/a Worldwide Diamond Co.

**Response:**

**Request No. 47:**    Frankel placed the order to purchase diamonds using the foregoing amounts transferred from Account No. 70026 to Bank Leumi Account No. 01029319.

**Response:**

**Request No. 48:**    At least a portion of these diamonds were seized by the United States government, and became subject to a civil forfeiture action pending before Judge Burns in the United States District Court for the District of Connecticut entitled, United States v. 277 Diamonds, Civil No. 3:02 CV 889 (EBB).

**Response:**

**Request No. 49:**    By memorandum dated May 3, 1999, Martin Frankel, as President and Secretary of Devonshire Technologies, Ltd., directed Monex Deposit Company to deliver 12,000 one-ounce Austrian Vienna Philharmonic .9999 fine gold coins purchased by Devonshire from Monex Deposit Company to the custody of Banque SCS Alliance in Geneva, Switzerland.

**Response:**

**Request No. 50:**    On May 5, 1999, 12,000 Vienna Philharmonic Gold Coins were shipped from the Vienna Mint at the instruction of Frankel's broker, Monex, to Banque SCS Alliance's custodian bank for precious metals, Union Bank of Switzerland, Acacias branch, 35, rue des Noirettes, Geneva.

**Response:**

**Request No. 51:**    These gold coins were seized by the Swiss authorities.  These gold coins were liquidated and converted to currency in the amount of $3,241,500.

**Response:**

**Request No. 52:**    Banque SCS Alliance subsequently wire transferred the amount of $3,241,500.00 to Account 00008114, held in the name of the Seized Asset Deposit Fund, at the Federal Reserve Bank.  These funds are the subject of a civil forfeiture action pending before Judge Burns in the United States District Court for the District of Connecticut entitled United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB).

**Response:**

**Request No. 53:**    On May 7, 1999, $28,000,050.20 less correspondence charges was transferred from Account No. 70026 to Bank Monte dei Paschi di Siena Account No. 785014.

**Response:**

**Request No. 54:**    Bank Monte dei Paschi di Siena Account No. 785014 was held in the name of Sanita Piu, S.P.A.

**Response:**

**Request No. 55:**    The foregoing May 7, 1999 transfer to Bank Monte dei Paschi di Siena was authorized by Frankel.

**Response:**

**Request No. 56:**    On May 14, 1999, Account No. 70026 had a balance of $30,384.30.

**Response:**

**Request No. 57:**    On June 27, 1999, Account No. 70026 was frozen pursuant to a request of the United States Government in accordance with a Mutual Legal Assistance Treaty between Switzerland and the United States.

**Response:**

**Request No. 58:**    On June 28, 2001, $3,241,500.00 was transferred from Account No. 70026 to Federal Reserve Bank Acct. No. 00008114.

**Response:**

**Request No. 59:**     On July 5, 2001, the Federal Bureau of Investigation seized $3,241,500.00 pursuant to a seizure warrant issued by the Honorable Joan G. Margolis, United States Magistrate Judge for the District of Connecticut, on July 5, 2001.

**Response:**

**Request No. 60:**     The $3,241,500.00 in converted currency is currently the subject of a civil forfeiture action pending before Judge Burns in the United States District Court for the District of Connecticut entitled United States v. $29,035,500.00, Civil No. 3:01CV1515(EBB).

**Response:**

**Request No. 61:**     On July 7, 1999, $26,499,980.00 was transferred from the Sanita Piu, S.P.A. account at Bank Monte dei Paschi di Siena to Account No. 70026.

**Response:**

**Request No. 62:**     On June 28, 2000, the funds contained in Account No. 70026, $29,035,500.00, were wire transferred to Account 20X6875(06), held in the name of U.S. Customs Suspense Account, at the Federal Reserve Bank of New York.

**Response:**

**Request No. 63:**     On July 6, 2001, the Internal Revenue Service Criminal Investigation seized the $29,035,500.00 pursuant to a seizure warrant issued by the Honorable Joan G. Margolis, United States Magistrate Judge of the United States District Court for the District of Connecticut.

**Response:**

Dated:  February 8, 2005

Respectfully submitted,


PEOPLES BENEFIT LIFE INSURANCE
COMPANY, VETERANS LIFE
INSURANCE COMPANY, HUFF-COOK,
INC.


David N. Rosen (14069)
400 Orange Street
New Haven, CT 06511
Telephone:  (203) 787-3513
Telecopy:  (203) 789-1605

*Of Counsel*
Forrest B. Lammiman, Esq. (CT 21508)
Randall A. Hack, Esq. (CT 14314)
Brian I. Hays, Esq. (CT 21601)
LORD, BISSELL & BROOK
115 S. LaSalle Street
Chicago, IL 60603
Telephone:  (312) 443-0700
Facsimile:  (312) 443-0336

11

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were served by Federal Express to the following:

John Hughes
Julie G. Turbert
Assistant U.S. Attorney
U.S. Attorney's Office
157 Church Street
P.O. Box 1824
23rd Floor
New Haven, CT  06510

James A. Lenes, Esq.
Douglas S. Skalka, Esq.
Neubert, Pepe, Monteith
195 Church Street
13th Floor
New Haven, CT  06510-2026

Susan Loving, Esq.
Lest, Loving & Davies
1701 South Kelly
Edmund, OK  73013

Andrew B. Campbell, Esq.
Graham Matherne, Esq.
Wyatt Tarrant & Combs
2525 West End Avenue
Suite 1500
Nashville, TN  37203

Charles G. Copeland, Esq.
Copeland, Cook, Taylor & Bush, P.A.
1062 Highland Colony Parkway
Suite 200
P. O. Box  6020
Ridgeland, MS  39157

Douglas J. Schmidt, Esq.
Blackwell Sanders Peper Martin, LLP
2300 Main Street
Suite 1000
Kansas City, MO  64108

This 8th day of February, 2005

Brian I. Hays

## SERVICE LIST

*USA v. $29,035,500.00, et al,*
**United States District Court for the District of Connecticut,**
**Case No, 3:01-CV-1515 (EBB)**

**Plaintiff U.S.A.**
John Hughes
Julie G. Turbert
Assistant U.S. Attorney
U.S. Attorney's Office
157 Church Street
P.O. Box 1824
23rd Floor
New Haven, CT   06510
(203) 821-3700

**Claimants**

James A. Lenes, Esq.                    Susan Loving, Esq.
Douglas S. Skalka, Esq.                 Lest, Loving & Davies
Neubert, Pepe, Monteith                 1701 South Kelly
195 Church Street                       Edmund, OK   73013
13th Floor
New Haven, CT   06510-2026
(203) 821-2000


Andrew B. Campbell, Esq.                Charles G. Copeland, Esq.
Graham Matherne, Esq.                   Copeland, Cook, Taylor & Bush, P.A.
Wyatt Tarrant & Combs                   1062 Highland Colony Parkway
2525 West End Avenue                    Suite 200
Suite 1500                              P. O. Box 6020
Nashville, TN   37203                   Ridgeland, MS   39157
(615) 244-0020


Douglas J. Schmidt, Esq.
Blackwell Sanders Peper Martin, LLP
2300 Main Street
Suite 1000
Kansas City, MO   64108

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:01 CV 1515 |
| | : | (EBB) |
| $29,035,500 IN ACCOUNT NUMBER | : | |
| 20X6875(06), HELD IN THE NAME OF U.S. | : | |
| CUSTOMS SUSPENSE ACCOUNT AT THE | : | |
| FEDERAL RESERVE BANK OF NEW | : | |
| YORK, et al. | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------    ------------------    -------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil No. 3:02 CV 889 (EBB) |
| 277 DIAMONDS VALUED AT | : | |
| APPROXIMATELY $2,461,093.00, et al. | : | |
| | : | |
| Defendants. | : | |

**HUFF-COOK, INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY AND
VETERANS LIFE INSURANCE COMPANY'S FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, HUFF-COOK,

INC., PEOPLES BENEFIT LIFE INSURANCE COMPANY AND VETERANS LIFE

INSURANCE COMPANY (collectively, "PVS"), by their attorneys, Forrest B. Lammiman,

Randall A. Hack, Brian I. Hays and David N. Rosen, submit the following request that each of

the following parties:

1.      Scott B. Lakin, Liquidator for International Financial Services Life
        Insurance Company;

EXHIBIT

B

2.    Paula A. Flowers, Receiver and Liquidator of Franklin American Life Insurance Company;

3.    George Dale, Liquidator of Family Guaranty Life Insurance Company;

4.    George Dale, Liquidator of Franklin Protective Life Insurance Company;

5.    George Dale, Liquidator of First National Life Insurance Company of America;

6.    Carroll Fisher, Receiver of Farmers & Ranchers Life Insurance Company; and

7.    Mike Pickens, Receiver for Old Southwest Life Insurance Company

(individually referred to as "Receiver") produce the requested documents for inspection, copying and reproduction in the offices of Lord, Bissell & Brook, LLP, 115 S. LaSalle Street, Chicago, Illinois 60603, within thirty (30) days after service hereof.

# I.
# DEFINITIONS AND INSTRUCTIONS

In this Request for Production, the following terms shall have the following meanings:

1.    "You," "Your," and "Receiver" refers to each of the parties listed above, both in his/her official capacity and as Receiver/Liquidator for the named insurance company, as well as his/her predecessors in office, successors in office, employees, attorneys, partners, agents, or representatives, and all other persons or entities acting or purporting to act on his/her behalf whether authorized to do so or not, including any consultants, attorneys, or other agents having possession, custody, knowledge, or responsibility for any document or information called for by these discovery requests.

2.    "Frankel Related Cases" refers to the following cases:

a.    *Larkin, et al. v. Prudential Institutional Liquidity Portfolio, Inc., et al.*, Case No. 01-CV-4163-NKL consolidated with Case No. 02-4090-CV-C-NKL (W.D. Mo.)

b.    *Larkin, et al. v. Prudential Institutional Liquidity Portfolio, Inc., et al.*, Case No. 02 CV 3593 (S.D.N.Y.);

c.    *Dale, et al. v. Frankel, et al.*, Case No. 3: 00 CV 359 LN (S.D. Miss.);

d.    *Dale vs. Colagiovanni, et al.*, Case No. 3:01 CV 663 BN (S.D. Miss.)

e.    *Dale, et al. v. Banque SCS Alliance, SA, et al.*, Case No. 02 CIV 3592,

(S.D.N.Y.)

f.    *Dale, et al. v. First American National Bank, et al.*, Case No. 251-02990 CIV, Circuit Court of the First Judicial District Hinds County, Mississippi

g.    *Amsouth Bank v. Dale, et al.*, Case No. 03 02 0677, (M.D. Tenn.)

h.    *First Tennessee Bank v. Dale*, et al., Case No. 03 02 0683, (M.D. Tenn.)

i.    *Dale, et al. v. ALA Acquisitions, Inc., et. al.*, Case No. 3:00 CV 359 LN, (S.D. Miss.)

3.    "Frankel Related Insurance Companies" refers to First National Life Insurance Company of America, Franklin American Life Insurance Company, International Financial Services Life Insurance Company, Old Southwest Life Insurance Company, Franklin Protective Life Insurance Company, Family Guaranty Life Insurance Company, and/or Farmers and Ranchers Life Insurance Company.

4.    The term "Frankel" means Martin Frankel (a/k/a Marty Frankel, Martin R. Frankel, David Rosse, David Rossi, David Ross, Mark Shuki, Michael King, Mike King, Martin King, William Kok, Eric Stevens, Will Stevens, David Stevens, Marty Rothschild and Robert Guyer), and any and all other persons or entities acting (or who or that acted) or purporting to act (or who or that purported to act) on behalf of any of the aforementioned persons.

5.    The term "LNS" means Liberty National Securities, Inc. (or any person or entity having a substantially similar name) and its predecessor(s) in interest, parent(s), subsidiaries, affiliates, assignees and licensees, and the directors, officers, employees, attorneys and agents of any of them, including, without limitation, any and/or all other persons or entities acting (or who or that acted) or purporting to act (or who or that purported to act) on behalf of any of the aforementioned entities or persons.

6.    "Communication" means any contact whatsoever and any transmission or exchange of words, numbers, graphic material, or other information, either orally, electronically, or in writing, whether made, received, or participated in, and includes without limitation any conversion, correspondence, letter, notes, memorandum, inter-office or intra-office correspondence, telephone call, telegraph, telegram, telex, telecopy, facsimile, E-Mail, Internet communication, telefax, cable, electronic message, tape recording, discussion, face-to-face meeting, or conference or meeting of any kind (whether in person, by audio, video, telephone, or in any other form).

7.    "Document" means any written, printed, typed, recorded, electronic, or graphic matter of every kind and description, any other data compilations from which information can be obtained and translated, if necessary, by You, into reasonably usable form, and any other tangible things which contain or constitute matters relevant to the subject matter of this lawsuit. By way of example only, this includes any writings, papers, agreements, contracts, communications, correspondence, letters, notes, opinions, opinion letters, messages, telegrams, telexes, telefaxes, telegraphs, telecopies, facsimiles, E-Mails, Internet communications or other electronic messages, memoranda, records, reports, books, summaries or other records of

telephone conversations or interviews, summaries or other records of personal conversations or interviews, minutes, summaries, or other records of meetings and conferences, statements obtained from witnesses or other persons, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, forecasts, progress reports, statistical data, statistical statements, financial statements, work sheets, work papers, estimates, drafts, graphs, charts, drawings, tables, accounts, analytical records, consultants' and experts' reports, appraisals, bulletins, notes, notices, marginal notations, notebooks, telephone records, bills, statements, records of obligation and expenditure, invoices, receipts, envelopes, brochures, pamphlets, advertisements, circulars, trade letters, press releases, receipts, lists, journals, printouts, compilations, tabulations, analyses, studies, surveys, expense reports, microfilm, microfiche, tape or disc records, sound records, video recordings, film, tape, photographs, programs and data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made. "Document" also includes drafts and revisions of any of the foregoing, any comments, notations, and markings appearing on any of the foregoing, and any exhibits, riders, attachments, supplements, and appendices to the foregoing.

8.      The phrases "documents relating to," and "documents concerning," mean and include documents that in any manner of form are relevant in any way to the subject matter in question, including, without limitation, all documents that contain, record, reflect, summarize, evaluate, comment upon, or discuss the subject matter or that in any manner state the background of, or were the basis or bases for, or that record, evaluate, comment upon, relate to, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at your conclusion(s), opinion(s), estimate(s), position(s), decision(s), belief(s), or assertion(s) concerning the subject matter in question.

9.      The terms "referring to" and "relating to" as used herein mean in any way directly or indirectly, in whole or in part, relating to, regarding, constituting, concerning, about, pertaining to, referring to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling or negating.

10.      "And" and "or" are to be construed conjunctively or disjunctively as necessary to bring within the scope of these requests all information that might otherwise be construed to be outside their scope.

11.      "Any," "all," "any and all," "each," "every," and "each and every" shall be construed as synonymous as necessary to bring within the scope of these requests all documents and information that might otherwise be construed to be outside their scope.

12.      Tense:  The past tense includes the present tense and vice versa.

13.      Singular/Plural:  The singular includes the plural and the plural includes the singular whenever such inclusion would result in any additional information being responsive to

4

any request.

14.    Capitalization:  The capitalized version of a word, phrase, or term shall be construed to mean the same as the noncapitalized version of that word, phrase, or term.

15.    Gender:  Unless otherwise established by context, the masculine gender shall be construed to include the feminine gender and the feminine to include the masculine.

16.    Ambiguities:  If in responding to any request you claim any ambiguity in either the request or a definition or instruction applicable thereto, identify in your response the language you consider ambiguous and include in your response the interpretation or assumptions upon which your response is made.

17.    When producing a requested document or file, indicate in an appropriate manner to which of these specific document requests a document or file applies.  In the alternative, produce responsive documents as they are kept in the ordinary course of business.

18.    This request for production shall be deemed continuing in nature, so as to require You to supplement its production under the circumstances.

19.    With respect to any information and each document covered by this request which you presently contend that you are not required to disclose because of any privilege, work product doctrine, or other exemption from discovery:

    j.    identify each person who has seen or received each such document at any time;

    k.    identify the author of the document;

    l.    state the date the document was created; and

    m.    state the nature of the privileges asserted (e.g., attorney/client, self-incrimination, work product, etc.).

20.    Unless otherwise indicated, the time period covered by these requests is the period from January 1, 1991 through the present.

## II.
## REQUESTS FOR PRODUCTION

**Request No. 1:**

All complaints, answers, motions, or memoranda filed in any of the Frankel Related

Cases.

**Request No. 2:**

All interrogatories, interrogatory responses, requests for admissions, answers to requests for admissions, stipulations, deposition transcripts, and court orders in the Frankel Related Cases.

**Request No. 3:**

All documents reflecting or relating to any communication between Frankel and any of the Frankel Related Insurance Companies.

**Request No. 4:**

All documents reflecting or relating to any communication between LNS and the Frankel Related Insurance Companies.

**Request No. 5:**

All documents reflecting or relating to the investments or assets of any of the Frankel Related Insurance Companies held with or through LNS.

**Request No. 6:**

All documents reflecting or relating to any communications between any of the Frankel Related Insurance Companies and any state insurance regulator.

**Request No. 7:**

All documents reflecting or relating to any communications between Frankel and any state insurance regulator.

**Request No. 8:**

All documents reflecting or relating to any communications between Marvin Thurston Little and any state insurance regulator.

**Request No. 9:**

All documents reflecting or relating to any communications between any of the Frankel Related Insurance Companies and Peoples Benefit Life Insurance Company.

6

**Request No. 10:**

All documents reflecting or relating to any communications between any of the Frankel Related Insurance Companies and Veterans Life Insurance Company.

**Request No. 11:**

All documents reflecting or relating to any communications between any of the Frankel Related Insurance Companies and Settlers Life Insurance Company.

**Request No. 12:**

All documents reflecting or relating to any agreement(s) between any of the Frankel Related Insurance Companies and Peoples Benefit Life Insurance Company.

**Request No. 13:**

All documents reflecting or relating to any agreement(s) between any of the Frankel Related Insurance Companies and Veterans Life Insurance Company.

**Request No. 14:**

All documents reflecting or relating to any agreement(s) between any of the Frankel Related Insurance Companies and Settlers Life Insurance Company.

**Request No. 15:**

All documents provided by any Receiver to the United State's Attorney relating to or reflecting any deficit in the reserves of any of the Frankel Related Insurance Companies.

**Request No. 16:**

All documents provided by any Receiver to the FBI relating to or reflecting any deficit in the reserves of any of the Frankel Related Insurance Companies.

7

Dated:  February 8, 2005

Respectfully submitted

PEOPLES BENEFIT LIFE INSURANCE
COMPANY, VETERANS LIFE
INSURANCE COMPANY, HUFF-COOK,
INC.

David N. Rosen (14069)
400 Orange Street
New Haven, CT 06511
Telephone:  (203) 787-3513
Telecopy:  (203) 789-1605

*Of Counsel*
Forrest B. Lammiman, Esq. (CT 21508)
Randall A. Hack, Esq. (CT 14314)
Brian I. Hays, Esq. (CT 21601)
LORD, BISSELL & BROOK
115 S. LaSalle Street
Chicago, IL 60603
Telephone:  (312) 443-0700
Facsimile:  (312) 443-0336

8

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were served by Federal Express to the following:

John Hughes
Julie G. Turbert
Assistant U.S. Attorney
U.S. Attorney's Office
157 Church Street
P.O. Box 1824
23rd Floor
New Haven, CT  06510

James A. Lenes, Esq.
Douglas S. Skalka, Esq.
Neubert, Pepe, Monteith
195 Church Street
13th Floor
New Haven, CT  06510-2026

Susan Loving, Esq.
Lest, Loving & Davies
1701 South Kelly
Edmund, OK  73013

Andrew B. Campbell, Esq.
Graham Matherne, Esq.
Wyatt Tarrant & Combs
2525 West End Avenue
Suite 1500
Nashville, TN  37203

Charles G. Copeland, Esq.
Copeland, Cook, Taylor & Bush, P.A.
1062 Highland Colony Parkway
Suite 200
P. O. Box 6020
Ridgeland, MS  39157

Douglas J. Schmidt, Esq.
Blackwell Sanders Peper Martin, LLP
2300 Main Street
Suite 1000
Kansas City, MO  64108

This 8th day of February, 2005

Brian I. Hays

## SERVICE LIST

*USA v. $29,035,500.00, et al,*
**United States District Court for the District of Connecticut,
Case No, 3:01-CV-1515 (EBB)**

**Plaintiff U.S.A.**
John Hughes
Julie G. Turbert
Assistant U.S. Attorney
U.S. Attorney's Office
157 Church Street
P.O. Box 1824
23rd Floor
New Haven, CT   06510
(203) 821-3700

**Claimants**

| | |
|---|---|
| James A. Lenes, Esq.<br>Douglas S. Skalka, Esq.<br>Neubert, Pepe, Monteith<br>195 Church Street<br>13th Floor<br>New Haven, CT   06510-2026<br>(203) 821-2000 | Susan Loving, Esq.<br>Lest, Loving & Davies<br>1701 South Kelly<br>Edmund, OK   73013 |
| Andrew B. Campbell, Esq.<br>Graham Matherne, Esq.<br>Wyatt Tarrant & Combs<br>2525 West End Avenue<br>Suite 1500<br>Nashville, TN   37203<br>(615) 244-0020 | Charles G. Copeland, Esq.<br>Copeland, Cook, Taylor & Bush, P.A.<br>1062 Highland Colony Parkway<br>Suite 200<br>P. O. Box  6020<br>Ridgeland, MS   39157 |
| Douglas J. Schmidt, Esq.<br>Blackwell Sanders Peper Martin, LLP<br>2300 Main Street<br>Suite 1000<br>Kansas City, MO   64108 | |

CHI1 983488v1