### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:02cv00889 (EBB) |
| | ) | |
| 277 DIAMONDS VALUED AT | ) | |
| APPROXIMATELY $2,461,093.00, | ) | |
| et al. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

### MEMORANDUM IN SUPPORT OF RECEIVER-CLAIMANTS'
### MOTION TO DISMISS

**I.     INTRODUCTION**

George Dale, Paula A. Flowers, W. Dale Finke, Kim Holland, and Julie Benafield

Bowman are the Insurance Commissioners for the States of Mississippi, Tennessee,

Missouri, Oklahoma, and Arkansas, respectively, acting in their official capacities as

Liquidators and/or Receivers for Franklin Protective Life Insurance Company, Family

Guaranty Life Insurance Company, First National Life Insurance Company of America,

Franklin American Life Insurance Company, International Financial Services Life Insurance

Company, Farmers and Ranchers Life Insurance Company in Liquidation, and Old Southwest

Life Insurance Company (the "Receiver-Claimants"). The Receiver-Claimants file this

memorandum in support of their motion to dismiss the claims asserted in this matter by

-1-

Claimants Peoples Benefit Life Insurance Company, Veterans Life Insurance Company, and Huff-Cook, Inc./Settlers Life Insurance Company (collectively "Peoples-Veterans-Settlers") under either Fed. R. Civ. P. 12(b)(6) or abstention principles.

Pursuant to a previous decision of this Court, affirmed by the United States Court of Appeals for the Second Circuit, Peoples-Veterans-Settlers lack standing to assert their constructive trust claims in this forfeiture case. The claims they assert do not evidence a direct interest in the forfeited property. Rather, they evidence only an indirect interest in the property subject to forfeiture. Any direct interest possessed by these claimants is solely in assets that are recovered by First National Life Insurance Company of America ("FNL"). Peoples-Veterans-Settlers's claims regarding those assets must be pursued in the FNL liquidation court.

Alternatively, this Court should abstain from hearing the claims advanced by Peoples-Veterans-Settlers. Federal courts have regularly abstained from exercising their jurisdiction over equitable claims, such as the constructive trust claims advanced here by Peoples-Veterans-Settlers, when an exercise of jurisdiction would interfere with the process of liquidation of an insurer. In its November 20, 2001 opinion concerning the efforts of Peoples-Veterans to assert identical claims in related forfeiture cases, the Second Circuit Court of Appeals held that the claims advanced by Peoples-Veterans would result in interference with the state court liquidation process regarding FNL. Similarly, federal district courts in Mississippi and Virginia have recognized that it is appropriate for the federal courts

to abstain in regard to the constructive trust claims asserted by Peoples-Veterans-Settlers and defer to the process of the FNL liquidation court. Consistent with these prior decisions, this Court should also exercise its discretion to abstain from accepting jurisdiction over Peoples-Veterans-Settlers's claims.

A final ground for dismissal, based on state law, also exists. In federal forfeiture proceedings, state law provides the rules of decision regarding interests in the property forfeited. Under Mississippi law, the controlling law regarding property interests and distribution of assets when an insurer, such as FNL, becomes insolvent is found in the Mississippi Insurers Rehabilitation and Liquidation Act. Under that Act, Peoples-Veterans-Settlers cannot assert constructive trust claims. Rather, they must continue with the claims they have filed as ceding insurers and accept distribution of FNL estate assets as Class 6 general creditors. This controlling question of law is currently before the FNL liquidation court for decision.

For each of these reasons, Peoples-Veterans-Settlers cannot properly state claims on which relief can be granted. As a result, this Court should dismiss the claims asserted by Peoples-Veterans-Settlers in this forfeiture action. Moreover, the reasons that make Peoples-Veterans-Settlers's claims subject to dismissal make it evident that any leave to amend would be futile, so the dismissal should be with prejudice.

## II.    THE STANDARD FOR CONSIDERATION OF A MOTION TO DISMISS

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with regard to lack of standing or the controlling question of Mississippi law, this Court must accept all of the factual allegations made by Peoples-Veterans-Settlers as true. All reasonable inferences must be drawn in their favor. *Mason v. American Tobacco Co.* 346 F.3d 36, 39 (2d Cir. 2003). The claims should be dismissed if, "accepting all of the allegations in the complaint as true and drawing all reasonable inferences in [the claimants'] favor, the [claims fail] to allege any set of facts that would entitle [the claimants] to relief." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 194 (2d Cir. 2003).

Where a grant of leave to amend upon failure to state a claim would be futile, the dismissal should be with prejudice. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)(appropriate to deny leave to amend when amendment would be futile).

## III.    FACTS

### A.    Peoples-Veterans-Settlers's Allegations

Peoples-Veterans-Settlers allege the following relevant facts in their verified statements of their claim. Solely for purposes of this motion, the allegations are presumed to be true.

Peoples Benefit Life Insurance Company is an Iowa corporation with its principal place of business in Frazer, Pennsylvania. Veterans Life Insurance Company is an Illinois corporation with its principal place of business in Frazer, Pennsylvania. Huff Cook, Inc., is

-4-

a Virginia corporation with its principal place of business in Virginia. At the relevant times, Huff-Cook, Inc. (then known as the Settlers Companies, Inc.) was the sole shareholder of Settlers Life Insurance Company, a corporation organized as a life insurance company under Virginia law.

First National Life Insurance Company of America ("FNL"), Franklin Protective Life Insurance Company ("FPL"), and Family Guaranty Life Insurance Company ("FGL") are now-insolvent life insurance companies that were domiciled in the State of Mississippi and subject to regulation by the State of Mississippi. George Dale, Commissioner of Insurance for the State of Mississippi, was appointed Liquidator (or Receiver) of each of these companies as of June 29, 1999, pursuant to the Mississippi Insurers Rehabilitation and Liquidation Act.

Similarly, Farmers and Ranchers Life Insurance Company ("FRL"), Old Southwest Life Insurance Company ("OSL"), Franklin American Life Insurance Company ("FAL"), and International Financial Services Life Insurance Company ("IFSLIC") are now-insolvent insurance companies located in Oklahoma, Arkansas, Tennessee, and Missouri. Each was subject to regulation by the insurance departments in their states of domicile, and each is represented here by its respective Receiver.

Each of the insurance companies represented by the Receiver-Claimants became insolvent because of the fraudulent activities of Martin Frankel. Frankel and others who assisted him caused the insurance companies to be looted of their assets. The monies were

then used for the personal benefit of Frankel and his co-conspirators in the looting.

Peoples and Veterans entered into reinsurance agreements with FNL in late 1998 and early 1999. Settlers entered into a reinsurance agreement with FNL in April 1999. Pursuant to these agreements, FNL was initially to reimburse Peoples, Veterans, and Settlers for policyholder claims made under the specified insurance policies. The reinsurance agreements contemplated that, at a later date, FNL would assume the blocks of insurance business as its own, subject to obtaining approval to do so from the Mississippi Department of Insurance.

As consideration for their reinsurance agreements, Peoples and Veterans paid FNL $14,689,593. This amount was transferred by Peoples and Veterans to FNL's general account over a period of time in November 1998 and early 1999. A few months later, Settlers transferred $44,795,000 to FNL's general account in consideration for its reinsurance agreement with FNL. After these payments were made to FNL's general account, Frankel and/or his co-conspirators caused the funds to be stolen from FNL's general account and placed in accounts subject to Frankel's control.

FNL was never granted approval by the Mississippi Insurance Department to actually assume the policies specified in the Peoples, Veterans, or Settlers reinsurance agreements. Instead, Frankel's fraud and looting of the insurance companies was discovered, and each of the insurance companies looted by Frankel, including FNL, was placed in Receivership.

**B.    The FNL Liquidation Proceedings**

Since the United States government explicitly reserved the regulation of insurance for the individual states, 15 U.S.C. § 1012, the problem of handling insolvent insurance companies is subject to state law. Mississippi, like most other states, enacted a statutory system for dealing with insolvent insurance companies: the Mississippi Insurers Rehabilitation and Liquidation Act ("Liquidation Act"). MISS. CODE ANN. § 83-24-1 *et seq.* The express purpose of the Liquidation Act is to provide "a *comprehensive scheme* for the rehabilitation and liquidation of insurance companies." MISS. CODE ANN. § 83-24-3(g) (emphasis added). In accordance with the Liquidation Act, Commissioner Dale, as FNL's Liquidator, must pay the claims brought against FNL according to the priorities created by the Mississippi Legislature. MISS. CODE ANN. § 83-24-83.

In accordance with the Liquidation Act, Peoples-Veterans-Settlers filed claims with FNL's liquidation estate for the amounts they paid to FNL as consideration for the reinsurance agreements. The FNL liquidation estate accepted the claims and classified the claims as those of Class 6 general creditors, which is the class that the Mississippi Legislature assigned to cover claims of ceding insurers.[1] MISS. CODE ANN. § 83-24-83(6).

---

[1]    "Ceding" is a term of art in the business of reinsurance.
Reinsurance is a contract by which one insurance company agrees to indemnify another in whole or in part against loss or liability which the latter has incurred under a separate contract as insurer of a third party. It is neither double insurance nor coinsurance because regardless of the nature of the liability of the original insurer and the reinsurer, they are not coliable to the original insured, nor liable to

(continued...)

-7-

Despite having made claims in the FNL liquidation estate proceedings in Mississippi,

Peoples-Veterans-Settlers have repeatedly attempted to compete with FNL and the other

Receiver-Claimants for the Insurance Companies' assets, including the Defendant Properties

at issue in this action.[2]  Specifically, Peoples-Veterans-Setters assert equitable claims for a

constructive trust over the Defendant Properties, alleging that they have a direct interest in

the Defendant Properties because they were fraudulently induced to enter into the reinsurance

agreements with FNL.  Peoples-Veterans-Settlers also assert claims that are allegedly for

"money had and received," but which in reality only restate their equitable constructive trust

---

[1](...continued)

> him in the same degree.  Reinsurance is a method by which an
> insurance company distributes all or part of its potential losses to
> another insurance company in order to reduce the extent of its
> possible loss under any policy or policies it has issued.  The insurer,
> or **ceding company**, allots to the reinsurer, or **assuming company**,
> that possible liability which in its judgment may exceed the amount
> its financial structure should safely assume on one risk.

*Fontenot v. Marquette Cas. Co.*, 247 So. 2d 572, 679-80 (La. 1971) (emphasis added).  Reinsurance
is not for the benefit of the original insured, *i.e.*, the policyholder, but rather for the original
insurance company, to protect its profits in the event that it pays more benefits on its policies than
it anticipated.  *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986) (noting that "reinsurance is
more in the nature of a contractual device or business practice employed among insurance companies
to spread their risks, than it is a policy of insurance . . . .").

[2]     The claims asserted by Peoples-Veterans-Settlers against the Defendant Properties
are their fifth attempt to circumvent Mississippi law.  Four other courts have recognized that
Peoples-Veterans-Settlers's claims must be handled in accordance with Mississippi law through the
comprehensive Liquidation Act and sent Peoples-Veterans-Settlers back to FNL's Liquidation
Estate.  *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411 (2d Cir. 2001); *Huff Cook, Inc.
v. George Dale*, No. 1:99 cv00109 (W.D. Va. March 29, 2001); *Peoples Benefit Life Ins. Co. v. Dale*,
No. 3:99-CV-537BN (S.D. Miss. Dec. 29, 1999); *Dale v. FNL*, No. G-99-98 S/2 (1st Jud. Dist,
Hinds Co., Miss. Feb. 4, 2004), *vacated and remanded on procedural grounds, Huff-Cook, Inc. v.
Dale*, 2005 WL 1039134 (Miss. May 5, 2005).

claim.[3]

## IV.    ARGUMENT

### A.    Peoples-Veterans-Settlers Lack Standing To Assert a Direct Interest in the Defendant Properties

In declining to allow Peoples and Veterans to intervene in and assert claims in other

forfeiture proceedings arising as a result of the criminal activities of Martin Frankel and his

co-conspirators, the United States Court of Appeals for the Second Circuit held that Peoples

and Veterans do not have an interest in the defendant property that is sufficient to sustain

constructive trust claims. *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415

(2d Cir. 2001). In so holding, the Second Circuit assumed, *arguendo*, that Peoples and

Veterans could trace their funds to the forfeited property and meet the other legal

requirements necessary to establish a constructive trust. Nevertheless, the Second Circuit

held:

> [I]n this case, the alleged constructive trust does not involve the nominal owner of the property subject to forfeiture (Frankel). Moreover, the agreement between Peoples and FNLIC has already been breached. Assuming *arguendo* that Peoples are correct in their assertion that a constructive trust exists, such a trust would arise between Peoples and FNLIC on the basis of their failed transaction. Thus, the constructive trust might give Peoples a direct interest in assets recovered by FNLIC, but it would only give Peoples and indirect interest in the property subject to forfeiture.

*Id.* at 417.

---

[3]       As with Peoples-Veterans-Settlers's constructive trust theory, their "money had and received" theory states that FNL retained funds that "in equity and good conscience" FNL had no right to retain.

Additionally, the Second Circuit held that allowing Peoples and Veterans to assert constructive trust claims in the forfeiture cases arising from Frankel's criminal activity would "allow Peoples to circumvent the state receivership proceedings and potentially gain an advantage over other creditors and policyholders of FNLIC." *Id.* Ultimately, the appellate court stated:

> Thus, even accepting Peoples' arguments (1) that they satisfy the state law requirements for a constructive trust vis-a-vis their relationship with FNLIC, and (2) that *Torres* supports Peoples' contention that a constructive trust may be a sufficient interest to confer standing in a forfeiture proceeding, *we find that Peoples' interest in this forfeiture proceeding is nonetheless indirect and contingent, and therefore not cognizable.*

*Id.* at 415-16 (emphasis added).

In reaching its decision denying intervention to Peoples and Veterans in other similar forfeiture cases, the Second Circuit necessarily reached the merits of whether Peoples and Veterans had standing to appear in those actions and assert such claims. They do not, and they are collaterally estopped to assert otherwise in this forfeiture case. *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 433-34 (2d Cir. 1995) (a party is collaterally estopped from re-litigating an issue it has unsuccessfully litigated in another action, when that issue was necessary to a judgment in a prior action).

Even if the bar of collateral estoppel were inapplicable as against Peoples and Veterans, the Second Circuit's prior holding regarding lack of standing to assert a direct interest in the subject property is still applicable here with regard to the claims of Peoples-Veterans-Settlers. These claimants raise the same constructive trust claims considered by the

-10-

Second Circuit in the other forfeiture cases in which this Court determined and the Second

Circuit affirmed that Peoples and Veterans lacked standing. Their statement of money-had-

and-received claims based in equity as against FNL (not the *res* at issue) suffers from the

same defect.

Because Peoples-Veterans-Settlers have no direct interest in the Defendant Properties,

their claims must be dismissed. Peoples-Veterans-Settlers have filed proofs of claim with

the FNL liquidation court, and, as previously held by the Second Circuit in other forfeiture

cases, that is the venue where their claims must be resolved pursuant to Mississippi's

Liquidation Act. A holding otherwise would allow Peoples-Veterans-Settlers to circumvent

state receivership proceedings, undermine those proceedings, and possibly gain an advantage

over other FNL creditors and policyholders.[4] That is exactly what this Court and the Second

Circuit have previously held to be inappropriate. As such, Peoples-Veterans-Settlers's claims

should be dismissed for lack of standing to assert a direct interest in the property subject to

forfeiture.

---

[4] In *Four Star Ins. Agency, Inc. v. Hawaiian Electric Indus., Inc.*, the Hawaii Supreme Court addressed the problem of allowing creditors of an insolvent insurer to attempt to assert claims against assets outside the liquidation court. "[T]he underlying purposes of the [liquidation act] include the equitable treatment of all creditors and the avoidance of preferences. Indeed, a flood of claims arising from an insurer's insolvency brought by each creditor of the insolvent insurer would potentially result in an award to one creditor that could be disproportionate to that of another creditor." *Four Star Ins. Agency, Inc.*, 974 P.2d 1017, 1024 (Haw. 1999). For that very reason, the court held that the receiver of the insolvent insurer was the sole party with standing to assert claims on behalf of the insolvent insurer, its policyholders, and its creditors. *Id.* at 1024-25.

**B.**    *Burford* **Abstention Principles Counsel Dimissal of Peoples-Veterans-Settlers's Claims**

Even if Peoples-Veterans-Settlers had standing to assert their claims, federal courts

have regularly abstained from exercising their jurisdiction in actions that interfere with the

process of liquidation of an insurer. In the course of abstaining, those courts have taken into

account the principles and concerns reflected in the McCarran-Ferguson Act. *Gonzalez v.*

*Media Elements, Inc.*, 946 F.2d 157, 157 (1st Cir. 1991); *Martin Ins. Agency, Inc. v.*

*Prudential Reins. Co.*, 910 F.2d 249, 254-55 (5th Cir. 1990); *Lac D'Amiante du Quebec v.*

*American Home Assur. Co.*, 864 F.2d 1033, 1045-46 (3d Cir. 1988); *Grimes v. Crown Life*

*Ins. Co.*, 857 F.2d 699, 703 (10th Cir. 1988); and *Law Enforcement Ins. Co., Ltd. v.*

*Corcoran*, 807 F.2d 38, 42-43 (2d Cir. 1986).

Pursuant to the *Burford* abstention doctrine, federal courts should abstain from hearing

cases over which they would otherwise possess jurisdiction when to do so would impinge on

"state efforts to establish a coherent policy with respect to a matter of substantial public

concern." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814

(1976) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The doctrine holds that a federal

court can dismiss a case if it

> presents difficult questions of state law bearing on policy problems of
> substantial public import whose importance transcends the result in the case
> then at bar, or if its adjudication in a federal forum would be disruptive of state
> efforts to establish a coherent policy with respect to a matter of substantial
> public concern.

*Quackenbush v. Allstate Ins. Co.*, , 517 U.S. 706, 726-27 (1996) (internal quotations

-12-

omitted).

The purpose of Mississippi's Liquidation Act is to provide a manner for determining what an insolvent insurer's assets are, locating those assets, collecting them, and distributing them appropriately. *Peoples Benefit Life Ins. Co. and Veterans Life Ins. Co. v. George Dale, et al.*, Civil Action No. 3:99CV537BN (S.D. Miss. Dec. 29, 1999) at 14 (unpublished opinion and order; copy attached). There is clearly an important state interest and public concern in establishing and maintaining a coherent policy with regard to liquidation of insurance companies and with regard to enforcement of state court injunctions. *Munich American Reins. Co. v. Crawford*, 141 F.3d 585, 591, 592-93 (5th Cir. 1998) (discussing important state concern in liquidation proceedings and recognition of state court injunction powers in context of reverse- preemption under McCarran-Ferguson Act).[5]

The United States District Court for the Southern District of Mississippi has previously held that the abstention doctrine established in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and refined in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), as to dismissal of equitable or discretionary claims, is applicable to the Liquidation proceedings concerning First National Life Insurance Company of America ("FNL") and, specifically, to an action brought by Peoples-Veterans against the Liquidator of FNL. *Peoples Benefit Life Insurance Co.*, Civil Action No. 3:99CV537BN (S.D. Miss. Dec. 29, 1999) at 7-16. In

---

[5]     Several federal courts have recognized the substantial and important state concern in coherent policy regarding liquidation proceedings. *Gonzalez*, 946 F.2d at 157; *Martin Ins. Agency*, 910 F.2d 249, 254-55 (5th Cir. 1990); *Lac D'Amiante du Quebec*, 864 F.2d at 1045-46; *Grimes*, 857 F.2d at 703; *Law Enforcement Ins. Co., Ltd.*, 807 F.2d at 42-43.

that action, as here, Peoples-Veterans sought to assert a claim of constructive trust in a court

other than the FNL liquidation court. That effort was expressly rejected in deference to the

statutory proof-of-claim process in the FNL liquidation court, with the District Court holding

that abstention was appropriate. Peoples-Veterans's equitable claims were dismissed. Other

claims "at law" for damages were initially stayed pending the outcome of the liquidation

proceedings.[6]

Similarly, the United States District Court for the Western District of Virginia

recognized that abstention of exercise of federal jurisdiction, in deference to the jurisdiction

of the FNL liquidation court, is appropriate with regard to claims brought by Settlers. *Huff

-Cook, Inc. v. George Dale, et al.*, Civil Action No. 1:99CV0109 (W.D. Va. March 29, 2001)

(unpublished opinion and order; copy attached). The Virginia District Court stayed the entire

case pending the outcome of the statutory process for proofs of claim in the FNL liquidation

proceedings. The court noted that outright dismissal of Settlers' constructive trust claim

would have been appropriate had it not been joined with other claims at law for damages.

In the instant case, Peoples-Veterans-Settlers assert claims in equity seeking

establishment of constructive trusts that would effectively remove the Defendant Properties

from the FNL liquidation estate. Abstention in deference to the Mississippi Liquidation

Court based on the strong state interest in centralized and orderly liquidation proceedings

regarding insurers is therefore appropriate. *Quackenbush*, 517 U.S. at 731 (*Burford* doctrine

---

[6]     The court later entered an agreed order dismissing without prejudice the claims for damages at law.

allows dismissal of cases based on abstention principles where the relief sought is equitable or discretionary). Peoples-Veterans-Settlers have already submitted the identical claims to the FNL liquidation court in Mississippi. *See* attached copies of proofs of claim filed by Peoples-Veterans-Settlers. They have affirmatively acknowledged in a Declaratory Petition, filed in the liquidation court, that the liquidation court possesses jurisdiction over their claims pursuant to Mississippi's Liquidation Act. They have expressly acknowledged the legal conclusion that their claims in the forfeiture cases are not appropriate given the Second Circuit's decision rendered against Peoples and Veterans. *See* attached portion of Declaratory Petition at ¶¶ 1, 17.[7]

Having finally submitted themselves to the jurisdiction of the liquidation court, that is the sole venue where they should proceed with their claims. *Corcoran v. Frank B. Hall & Co., Inc.*, 545 N.Y.S.2d 278, 282 (N.Y. App. Div. 1989) ("it is well established that in filing a proof of claim in liquidation, a claimant submits itself to the jurisdiction of the liquidation court.") and *State of Arizona, ex. rel., Low v. Imperial Ins. Co.*, 682 P.2d 431, 437 (Ariz. Ct. App. 1984) (filing of proof of claims with liquidator in receivership proceedings

---

[7]    On May 27, 2005, one day following issuance of the mandate by the Mississippi Supreme Court that vacated the liquidation court ruling against Peoples-Veterans-Settlers solely on procedural grounds, Peoples-Veterans-Settlers moved the FNL liquidation court to allow them voluntarily dismiss their Declaratory Petition seeking establishment of constructive trusts. That attempt to avoid a further adverse ruling from the liquidation court does not affect the liquidation court's jurisdiction or the reason why this Court should abstain from hearing Peoples-Veterans-Settlers's claims. Even if the liquidation court dismisses the Declaratory Petition, it must still rule on the same issue under the statutory process concerning the proofs of claim filed by Peoples-Veterans-Settlers with the FNL Liquidator. Those proofs of claim have not been withdrawn, and it is the proof of claim process that has formed the basis for abstention by two other federal courts.

in one state is a voluntary submission to jurisdiction of the domiciliary liquidator, and actions in liquidation court bind the claimants).

As previously held by this Court and the Second Circuit Court of Appeals, the claims advance here by Peoples-Veterans-Settlers involve only an indirect interest in the forfeited assets. *U.S. v. Peoples Benefit Life Ins. Co.*, 271 F.3d at 417. Allowing them to assert these claims here would inappropriately allow Peoples-Veterans-Settlers to "circumvent the state receivership proceedings and potentially gain an advantage over other creditors and policyholders of FNLIC. Furthermore, there is a risk that allowing [Peoples-Veterans-Settlers] to intervene in this case may open the door for other creditors and thereby undermine state receivership laws." *Id.*

The claims asserted here by Peoples-Veterans-Settlers should be dismissed, consistent with the prior holdings of this Court, the Second Circuit Court of Appeals, the United States District for the Southern District of Mississippi, and the United States District Court for the Western District of Virginia, and in accord with Peoples-Veterans-Settlers's own admission that the liquidation court possesses jurisdiction over its claims under the Mississippi Insurers Rehabilitation and Liquidation Act.

### C.    Controlling State Law Regarding the Property Interests Before the Court Requires Dismissal of Peoples-Veterans-Settlers's Claims

When Peoples-Veterans-Settlers filed their Verified Claims to the Defendant Properties, they came to this Court, asking that they, as creditors to FNL, be treated differently than any of the other creditors. Such a request is contrary to the plain language

and underlying purpose of the Liquidation Act. If this Court should determine that Peoples-Veterans-Settlers have standing and that an abstention is not warranted, a review of the Liquidation Act as well as cases interpreting other states' nearly identical liquidation acts provides that Peoples-Veterans-Settlers's request for preferential treatment must be denied. Since Peoples-Veterans-Settlers have no legal basis for their claims to the Defendant Properties, their Verified Claims must be dismissed.

When the Mississippi Legislature adopted the Liquidation Act, it created a statutory scheme for the handling of financially troubled insurance companies that it called "comprehensive." MISS. CODE ANN. § 83-24-3. The purpose of the Act is to "protect insureds, claimants, creditors and the general public." *Id.* Since the issues addressed by the Act are of "vital public interest and concern," *id.*, anytime a court considers the Act, such consideration must be done with Mississippi's public policies in mind. *See, e.g., Neff*, 704 S.W.2d at 1 (in ruling on a similar statutory scheme, noting that "The statute at issue is contained within a comprehensive regulatory scheme regarding insurance and must be considered in light of the public policies that prompted the development of this statutory framework.") Courts determining the public policy of statutory schemes nearly identical to the Act have determined that "the underlying purposes of the [liquidation act] include the equitable treatment of all creditors and the avoidance of preferences." *Four Star Ins. Agency*, 974 P.2d at 1024. *See also Corcoran*, 545 N.Y.S.2d at 280-81.

Under the Act, a "'Creditor' is a person having any claim . . . ." MISS. CODE ANN. §

83-24-7(c). The very basis of Peoples-Veterans-Settlers's claim to the Defendant Properties is their assertion that they are entitled to money they willingly transferred into FNL's general account. Where, as here, a statute is clear and unambiguous, no further statutory construction is necessary, and the statute should be given its plain meaning. *Miller v. Meeks*, 762 So. 2d 302, 305 (Miss. 2000). Although Peoples-Veterans-Settlers are seeking the Defendant Properties, the basis for their asserted claim is a claim against FNL. The definition of who a creditor is under the Act can be no clearer: any person having any claim. The plain meaning of the Act establishes that Peoples-Veterans-Settlers are creditors to FNL.

Peoples-Veterans-Settlers's role as creditors to FNL requires them to submit to the Liquidation Act. Whenever a creditor presents its claim against an insolvent insurance company estate, that claim is placed into a payment class. The assignment of payment or priority classes is controlled by the Liquidation Act. MISS. CODE ANN. § 83-24-83. Of the ten classes, class six is reserved for ceding and assuming insurance companies. MISS. CODE ANN. § 83-24-83(6). There is no dispute that Peoples-Veterans-Settlers were "ceding" insurance companies. As a result, their claim against FNL has been appropriately placed in class six.

The priority statute is absolute. By its own language, it displaces all other laws. Peoples-Veterans-Settlers, displeased with the clear results of the Liquidation Act, have repeatedly attempted to use the equitable concept of a constructive trust in their efforts to fashion relief outside the Liquidation Act. However, nothing in the Liquidation Act provides

for different treatment if a creditor seeks relief pursuant to the principles of equity. Indeed, nothing in the Liquidation Act provides for a claim based on equity.[8] Since equitable claims like those presented by Peoples-Veterans-Settlers are not entitled to special treatment, Peoples-Veterans-Settlers must proceed under the Liquidation Act and be treated like any other creditor.

Although Mississippi has not addressed the issue of equitable claims under the Liquidation Act, several other states have concluded that creditors are not entitled to avoid liquidation acts by asserting constructive trust claims. *See, e.g., Benjamin v. Credit General Ins. Co.*, No. 03 AP - 1117, ¶1, 2004 WL 3090181, *1 (Ohio Ct. App. Dec. 30, 2004) (affirming decision that there is no relief available to a creditor of an insolvent insurance company outside the statutory scheme for claims); *Swiss Re Life Co. America v. Gross*, 479 S.E.2d 857, 861 (Va. 1997) (no equitable claim of priority for experienced reinsurer such as to boost its unsecured claim ahead of policyholders); *Northwestern Nat'l Ins. Co. v. Kezer*, 812 P.2d 688, 690 (Colo. Ct. App. 1990) (a constructive trust could not be imposed over the assets of an insolvent insurance company); and *In re Security Casualty Co.*, 537 N.E.2d 775, 780 (Ill. 1989) (same). When an insurance company is placed in liquidation, the ceding companies (such as Peoples-Veterans-Settlers) have often "sought to obtain preference for claims against the insolvent reinsurer under statutes similar to" the Act. *Kezer*, 812 P.2d at

---

[8]     In fact, in all of the Liquidation Act, the only time equity is mentioned is in the stay against lawsuits being brought against the liquidator: "no action at law or equity or in arbitration shall be brought against the insurer or liquidator . . . ." Miss. Code Ann. § 83-24-47(1).

692. A variety of theories, including Peoples-Veterans-Settlers's equity-based constructive

trust theory, have been dismissed as legally unfounded. *Id.* (listing cases). As the Colorado

Court of Appeals noted:

> In considering the various legal theories advanced by the reinsureds, all the
> courts were influenced by the underlying purpose of the liquidation statutes,
> in general, and the preference statute in particular. That purpose is to provide
> preferred protection to individual policyholders and claimants who, unlike a
> reinsured company, had little means of analyzing the risks involved in dealing
> with the now insolvent concern.

*Id.*

In the Ohio, Illinois, and Colorado cases, the courts examined the applicable state

statutes, which are nearly identical in terminology and purpose to the Liquidation Act, and

determined that no creditor – be it a bankruptcy estate (*Benjamin*), a group of defrauded

shareholders (*Security Cas.*) or a ceding insurance company (*Kezer*) – is entitled to relief

other than that specified in the priority statute. In each case, the theory of a constructive trust

was advanced by the creditor and rejected as a matter of law. *Benjamin*, No. 03 AP - 1117,

¶ 23, 2004 WL 3090181; *Kezer*, 812 P.2d at 690; and *Security Cas.*, 537 N.E.2d 782. These

courts ruled, as this Court should, that "[t]he statute classifying claims for preference

purposes is both specific and comprehensive. It leaves no room for the judiciary to add to

the type of claims to be preferred or to establish a method of preference not created by the

statute." *Kezer*, 812 P.2d at 690. *See also In re Coronet Ins. Co.*, 698 N.E.2d 598, 603 (Ill.

Ct. App. 1998) (finding that equitable claims in an insurance liquidation are in opposition to

the purpose of the insolvency act); *Bluewater Ins. Ltd v. Balzano*, 823 P.2d 1365, 1374 (Co.

1992); and *Myers v. Protective Life Ins. Co.*, 342 So. 2d 772, 777 (Ala. 1977) (finding that even if a constructive trust could legally exist, equity would not permit it as the creation of one would diminish the policyholders' claims).

The funds Peoples-Veterans-Settlers paid as consideration for the reinsurance agreements they entered into with FNL were deposited into FNL's general account. These funds, along with the rest of FNL's assets, were then stolen. Any recovery of FNL's assets and subsequent distribution of the recovered assets must be made in accordance with the Liquidation Act. Peoples-Veterans-Settlers's repeated attempt to avoid the only relief available to them does not change the impact of the Liquidation Act: it is their sole remedy. If this Court determines that it must rule on the legal issue presented by the Liquidation Act, it should follow the plain language of the Liquidation Act and the manner in which other states' liquidation acts have been interpreted. As such, Peoples-Veterans-Settlers's claims must be dismissed.

## V.    **CONCLUSION**

For the foregoing reasons, the Receiver-Claimants respectfully request that the claims asserted by Peoples-Veterans-Settlers in this proceeding be dismissed with prejudice.

This 3d day of June, 2005.

-21-

James A. Lenes (Fed Bar No. 10408)
Douglas S. Skalka (Fed. Bar No. 00616)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510-2026
Telephone: (203) 821-2000
Facsimile: (203) 821-2009
Of Counsel

and

Douglas J. Schmidt (MO Bar #34266)
Terrance M. Summers (MO Bar #38319)
Patrick A. McInerney (MO Bar #37638)
Tessa K. Jacob (MO Bar #44708)
BLACKWELL SANDERS PEPER MARTIN, LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080

C. Philip Curley
Alan F. Curley
Cynthia H. Hyndman
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone: (312) 663-3100

Counsel for
**W. DALE FINKE**, Director of the Department of
Insurance for the State of Missouri, in his official
capacity as Liquidator of **INTERNATIONAL
FINANCIAL SERVICES LIFE INSURANCE
COMPANY**

-22-

Charles G. Copeland (MBN 6516)
Rebecca Jordan (MBN 99611)
COPELAND, COOK, TAYLOR & BUSH, P.A.
200 Concourse, Suite 200
1062 Highland Colony Parkway
Ridgeland, Mississippi 39158
(601) 856-7200

Counsel for
**GEORGE DALE,** Commissioner of Insurance for the
State of Mississippi, in his official capacity as Receiver
of **FRANKLIN PROTECTIVE LIFE INSURANCE
COMPANY, FAMILY GUARANTY LIFE
INSURANCE COMPANY,** and **FIRST NATIONAL
LIFE INSURANCE COMPANY OF AMERICA**

Andrew B. Campbell (TN 14258, CT Fed. 21433)
Graham Matherne, Esq.
WYATT, TARRANT & COMBS
2525 West End Avenue, Suite 1500
Nashville, Tennessee 37203
(615) 244-0020

Counsel for
**PAULA A. FLOWERS**, Commissioner of Commerce
and Insurance for the State of Tennessee, in her official
capacity as Receiver of **FRANKLIN AMERICAN
LIFE INSURANCE COMPANY**

Susan Loving (OK Bar #160)
LESTER, LOVING & DAVIES
1701 South Kelly
Edmund, Oklahoma 73013
(405) 844-9900

-23-

Counsel for
**KIM HOLLAND,** Insurance Commissioner for the State
of Oklahoma, in her official capacity as Receiver of
**FARMERS AND RANCHERS LIFE INSURANCE
COMPANY, IN LIQUIDATION**

Steve A. Uhrynowycz (AR Bar #82162)
Liquidation Division
1023 West Capitol Avenue, Suite 2
Little Rock, Arkansas 72201
(501) 371-2776

Counsel for
**JULIE BENAFIELD BOWMAN**, Insurance
Commissioner for the State of Arkansas, in her official
capacity as Receiver of **OLD SOUTHWEST LIFE
INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by U.S.

Mail, first class postage pre-paid, to the following:

John B. Hughes, Esq.
David X. Sullivan, Esq.
United States Attorney's Office
P.O. Box 1824
New Haven, CT 06508

Graham Matherne, Esq.
Wyatt Tarrant & Combs
2525 West End Avenue, Suite 1500
Nashville, TN 37203

Alan F. Curley, Esq.
C. Philip Curley, Esq.
Cynthia H. Hyndman
Robinson, Curley & Clayton, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606

Susan B. Loving, Esq.
Lester, Loving & Davies
1701 South Kelly Avenue
Edmund, OK 73013

Forrest B. Lammiman, Esq.
Randall A. Hack, Esq.
Brian I. Hays, Esq.
Lord, Bissell & Brook
115 S. LaSalle Street
Chicago, IL 60603

David N. Rosen, Esq.
Rosen & Dolan, P.C.
400 Orange Street
New Haven, CT 06511

-25-

Douglas J. Schmidt, Esq.
Blackwell Sanders Peper Martin, LLP
4801 Main Street, Suite 1000
Kansas City, MO  64112

Steve A. Uhrynowycz, Esq.
Arkansas Insurance Department
1023 West Capitol Avenue
Little Rock, AR  72201

This the 3d day of June 2005.

_____
James A. Lenes