First National Life Insurance Company of America
*in liquidation*
Post Office Box 11316
Birmingham, Alabama 35202-1316
205-942-2112

POC No. _____
Mailing Date 05-12-2000

# PROOF OF CLAIM

### NOTE: Final date for filing this Proof of Claim is JUNE 29, 2000

This Proof of Claim must be completed, signed, and returned to the above address, postmarked by JUNE 29, 2000.

**READ ALL OF THE INSTRUCTIONS ON THE FRONT AND BACK OF THIS FORM BEFORE COMPLETING**
**PLEASE TYPE OR PRINT**

**Enter Amount Claimed, if any:**

| | |
|---|---|
| $ _____ | Claim is for agent commission |
| $ _____ | Claim is for deficiency of secured claim |
| $ _____ | Claim is for trade or general creditor debts due from FNL |
| $ _____ | Claim is for employee compensation or benefits due |
| $ 14,689,593.00 * | Claim of a ceding or assuming insurance company |
| $ _____ | Claim of Federal, State or Local government |
| $ _____ | Claim of a Guaranty Association |
| $ 14,689,593.00 * | Other (provide explanation on separate sheet) |

Attach a written statement explaining your claim and include all supporting documentation for your claim, including:
- The particulars of the claim, including the consideration given for it.
- The identity and amount of the security on the claim.
- The payments made on the debt, if any.
- That the amount claimed is justly owing and that there is not a set-off, counterclaim or defense to the claim.
- If you claim a right of priority of payment or other specific right, provide explanation.
- Attach a copy of the written document or instrument, which is the foundation of your claim.

If the amount of your claim is unknown, the amount may be omitted and insert the words "Contingent" or "Undetermined."

Include the name and address of the claimant and the attorney who represents the claimant, if any.

*See Statement of Claim Attached Hereto; Claims are for $14,689,593.00, and all proceeds and earnings therefrom.*

---

The undersigned subscribes and affirms as true under the penalties of perjury as follows: that he/she has read the foregoing Proof of Claim and attachments thereto and knows the contents thereof, that the said claim against the above named company is true of his/her own knowledge except as to the matters therein stated to be alleged upon information and belief and as to those matters therein stated to be alleged upon information and belief and as to those matters he/she believes to be true, that no payment of or on account of the aforesaid claim has been made except as stated herein, that there are no set-offs, counterclaims or defense thereto, that claimant is not a secured creditor or claimant and has no security except as stated herein.

*Forrest B. Lammiman* (signature)
Attorney for Claimant, if any, sign on this line

**Forrest B. Lammiman, Esq.**
Attorney for Claimant, if any - Please Print

**115 S. LaSalle Street**
Street Number

**Chicago, Illinois    60603**
City and State                    Zip Code

**Peoples Benefit Life Insurance Company and Veterans Life Insurance Company**

*Michael A. Eubanks* (signature)
Individual Claimant or Corporate Officer, (Title), sign on this line

By: **Michael A. Eubanks,    Vice-President**
Individual Claimant or Corporate Name and Officer - Please Print

**520 Park Avenue**
Street Number

**Baltimore, Maryland        21201**
City and State                    Zip Code

---

Mailing List Number 5475
Reference Info 1
Co Code 07

PEOPLES BENEFIT LIFE INS
ATTN. FORREST B. LAMMIMAN
LORD, BISSELL & BROOK
115 SOUTH LA SALLE STREET
CHICAGO, IL 60603



RECEIVED JUN 3 0 2000

**STATEMENT OF CLAIM: ADDENDUM TO JOINT PROOF OF CLAIM OF PEOPLES
BENEFIT LIFE INSURANCE COMPANY AND VETERANS
LIFE INSURANCE COMPANY IN THE LIQUIDATION OF
FIRST NATIONAL LIFE INSURANCE COMPANY**

Re:     <u>George Dale, Commissioner of Insurance of the State of Mississippi v. First
National Life Insurance Company of America, A Mississippi Domiciled Insurance
Company</u>
In the Chancery Court of the First Judicial District, Hinds County, Mississippi
Civil Action No. G99-908

Peoples Benefit Life Insurance Company ("Peoples") and Veterans Life Insurance

Company ("Veterans," and together ith Peoples, the "Claimants") assert claims against the

liquidation estate of First National Life Insurance Company ("First National") in the amount of

$14,689,593.00 (together ith all proceeds and earnings therefrom) plus pre-judgment interest.

The causes of action entitling Peoples and Veterans to the foregoing amounts include:

(1)     damages for negligent misrepresentation;

(2)     the return of the "Fund" (as defined belo ) pursuant to the doctrines of (a) money

        had and received and (b) constructive trust, or, alternatively, as the security for a

        secured claim;

(3)     Return of the Fund upon rescission of the contract;

(4)     as alternative relief, the obligations of Peoples and Veterans under the policies

        that are the subject of the Agreements may be novated to and assumed by the

        Liquidator of First National;

(5)     possible administrative priority expense claims for conversion and unjust

        enrichment; and

1

(6)    Section 83-24-83 of Miss. Code Ann. as unconstitutional at the time Peoples'
and Veterans' right to recover the Fund vested and their other claims vested, and
the recent amendments to section 83-24-83 (if and to any extent they other ise
may be applicable to the claims of Peoples and Veterans) cannot be applied in the
present receivership ithout violating the Constitutional rights of Peoples and
Veterans.

Peoples and Veterans expressly reserve the right to submit all disputes ith and claims
against First National and its liquidation estate to binding arbitration pursuant to the terms of the
"Agreements" (as defined belo ).

### Basis and Nature of the Claims of Peoples and Veterans Against First National

Martin Frankel as indicted in the fall of 1999 by a federal grand jury for his activities
involving Thunor Trust, First American, Franklin American Life Insurance Company
("Franklin") and a host of affiliated insurance companies and entities. This saga began hen
Frankel arranged for the formation of Thunor Trust in 1991, and then for Thunor's purchase of a
holding company, Franklin American Company, and thus for Thunor's indirect o nership of
Franklin American and other insurance companies. Similarly, in 1997 Frankel arranged for
Thunor Trust's acquisition of the parent company of First National, thus also bringing First
National and its affiliates under his control. Soon thereafter, Frankel caused First National and
affiliated insurance companies to invest their money in Frankel's o n shell corporation and
began using that money for his o n personal benefit, as he had already done ith the financial
reserves of the Franklin American entities. This scheme, hich has been idely documented in
the business and legal press, resulted in more than $200 million in funds being embezzled from

2

various entities, including Peoples and Veterans.

The claims of Peoples and Veterans against First National are, in the first instance, rooted in the company's participation in Frankel's embezzlement of funds from Peoples and Veterans hen they ere improperly induced to enter an assumption reinsurance agreement ith First National.

Frankel caused a holding company called International Financial Corporation ( hich as incorporated in Oklahoma but had its principal place of business in Tennessee) to purchase First National in late 1997. Both Franklin American and First National, together ith all of the other companies controlled by Frankel, ere o ned either directly or indirectly by Thunor Trust. On information and belief, John Hackney as the only person ho actually served as a Trustee for the Thunor Trust. Hackney served as President and Chief Executive Officer of all or most of the insurance companies o ned by Thunor Trust, including Franklin American and First National.

Frankel and Hackney arranged for First National, hich had been domesticated in Alabama, to be redomesticated in Mississippi. On information and belief, the rationale for the redomestication as the belief that the insurance regulatory atmosphere in Mississippi as lax, and that Frankel and his associates ould be able to ire transfer the company's reserves out of state more readily.

In June of 1998, a broker contacted Peoples and Veterans and put them in touch ith the officers of Franklin American to explore Franklin American's possible purchase (via so-called "assumption reinsurance," hich in the argot of the insurance business means a novation of a block of business through an assumption of the policy liabilities and a corresponding transfer of the investment reserves from one company to another) of blocks of business from Peoples and

3

Veterans. During the course of discussions ith officials from Franklin American,

representatives of Peoples and Veterans objected that Franklin American's financial rating as

not high enough to assure the safety of a transfer of significant blocks of business. In response,

officials at Franklin American ( ho also ere officers of First National) offered First National as

the more acceptable transferee on the ground that it as the highest rated affiliate of Franklin

American. Based upon these representations regarding the financial condition of First National,

as ell as reliance upon representations by First National and Franklin American regarding the

statutory financial statements of First National, Peoples and Veterans entered into a set of

agreements ith First National for purposes of accomplishing the assumption reinsurance

transaction.

Accordingly, on or about October 30, 1998, Peoples and Veterans entered into a Master

Agreement, Reinsurance Agreement, and Assumption Agreement ith First National

(collectively, the "Agreements"), for the purpose of effecting the initial transfer of the blocks of

insurance business (including obligations and liabilities to policyholders and also including the

investment reserves created for the payment of those obligations) from Peoples and Veterans to

First National. (Copies of the Agreements are attached as Exhibits A1, A2 and A3 hereto.)

Shortly thereafter, Peoples and Veterans formally transferred administrative responsibility for the

subject insurance policies to First National, although from the first those administrative functions

in fact ere handled primarily by Franklin American, at its offices in Franklin, Tennessee. In

addition, the investment reserves aggregating $14,689,593.00 (together ith all proceeds and

earnings therefrom, the "Fund") ere transferred by Peoples and Veterans to a bank account in

Memphis, Tennessee in the name of First National in three separate installments - one in the

4

amount of $2,134,101.00 on January 19, 1999; and a final installment in the amount of
$5,267,988.00 on February 25, 1999. (Copies of the transfer confirmations are attached as
Exhibit B.) Each ire transfer of the Fund coincided ith the transfer of a specific block of
insurance business pursuant to the Agreements.

The parties understood that the Agreements ould and could not become effective until
the Mississippi Commissioner of Insurance approved the Assumption Agreement, and also
understood that to any extent that First National as prohibited from reinsuring or assuming any
of the transferred blocks of business, that block of business, including the corresponding portion
of the Fund, ould be returned to Peoples and Veterans. The parties anticipated that the
Assumption Agreement ould be approved not later than December 1, 1998. Nevertheless, that
approval had not been obtained hen the Commissioner of Insurance for the State of Mississippi
placed First National in rehabilitation proceedings on or about May 10, 1999, pursuant to an
order of this Court. First National's rehabilitation quickly as seen to be impossible, and its case
as converted to a liquidation proceeding pursuant to an Order of this Court on June 29, 1999.
On May 11, 1999, a Tennessee court placed Franklin American into receivership pursuant to its
Rehabilitation Order; that proceeding as converted to a liquidation proceeding hen that court
entered its Liquidation Order on October 25, 1999. These and other receiverships ere
commenced because regulators had finally discovered Frankel's looting of these and affiliated
companies.

The Fund that as transferred pursuant to the pending assumption reinsurance transaction
appears to have been taken by Frankel as part of his embezzlement scheme. The Fund runs ith
the blocks of business for hich the assumption never as approved. The liquidation order for

5

First National cut off all reinsurance transactions. Because the Agreements ere not and cannot

be approved at this point (unless the provision of the liquidation order cutting off all reinsurance

agreements is vacated and modified to order the Liquidator to assume all obligations to the

policyholders ho are the subject of the Agreements), Peoples and Veterans have reassumed

their obligations to the policyholders for those blocks of business and are entitled to the return of

their Fund, regardless ho may no be in possession of the Fund.

      The Fund therefore as and remains property of Claimants; and it is not and never has

been the property of First National, Franklin American or their estates. Under established

Mississippi la , to any extent that the Fund is or may become subject to the possession or control

of the Liquidator of First National, the Fund is held as money had and received, remains

impressed ith a constructive trust and is not property of the liquidation estate of First National.

Thus, if the Liquidator holds or may in the future hold or control any portion of the Fund, the

Liquidator holds those proceeds for the benefit of Peoples and Veterans and for the benefit of the

policyholders for the blocks of business hich ere never assumed by First National.

Alternatively, the cutoff of all reinsurance obligations should be vacated to order the Liquidator

to assume the reinsurance treaty and thereby replace Peoples and Veterans as the party obligated

to the policyholders.

      Upon information and belief, Franklin American may have received all or part of the

Fund hen it received payments from Frankel's entities on or about April 9, 1999 aggregating

approximately $57 million. This transfer from Frankel's entities to Franklin American occurred

because certain regulators in Tennessee insisted that Frankel's investment vehicle, Liberty

National Securities, Inc. ("LNS"), return funds hich it controlled. Subsequently, according to

6

documents filed by the Liquidator ith this Court (as ell as ith the other courts presiding over the related receiverships in other states), insurance officials in Mississippi, Oklahoma, Arkansas and Missouri questioned Franklin American's title to the foregoing $57 million, contending, among other things, that "(a) the $57 million as a payment to [Franklin American] in excess of the net money originally paid by LNS to [Franklin American], (b) the $57 million as removed from funds that ere o ned by [Franklin American] and the other aforementioned insurance companies in an account commingled by LNS and subject to a constructive trust and equitable distribution, and (c) the remittance of $57 million constituted a preference under federal bankruptcy la ." Order Approving Compromise and Settlement of Interstate Claims at ¶5. Thus, the allegations of these receivers (including the Liquidator of First National) support the vie that the $57 million obtained by Franklin American from LNS in April 1999 did not belong in its entirety to Franklin American. Additionally, those allegations support the conclusions that (1) Frankel, ho controlled Franklin American and First National directly or indirectly, caused funds to be sent to Franklin American hich he kne ere neither the funds of, nor due or o ing to Franklin American, and (2) Franklin American agreed to the receipt of, or took custody of, funds hich it had reason to believe ere (in hole or in part) the property of others. The timing further suggests that part of that amount may include all or a portion of the Fund hich should be returned to Peoples and Veterans, ho have reassumed responsibility for the blocks of business hich the Fund as intended to protect.

Furthermore, Peoples and Veterans assert that if the Liquidator of First National has received a portion of the Fund pursuant to the compromise among the receivers ( hereby about $17.5 million as to be transferred to the liquidators for First National and related estates in

7

Oklahoma, Missouri and Arkansas) or by any other means, the First National receivership is liable for an administrative priority claim based upon the Liquidator's interference ith the legal and equitable rights of Peoples and Veterans entitling them to have the Fund returned.

### Summary of Claims

The Claimants are entitled to damages and to the return of any portion of the Fund no or in the future in the control or custody of the Liquidator of First National, in each case up to the aggregate amount of the Fund, plus pre-judgment interest. The claims of Peoples and Veterans against the estate of First National for the return of the Fund or for damages connected ith its loss may be summarized as follo s:

1.    <u>Negligent Misrepresentation</u>.  First National negligently (and perhaps fraudulently) misrepresented to Peoples and Veterans that First National as solvent and could rightfully assume the subject blocks of business, hen First National kne or should have kno n that the assets of First National have been turned over to Martin Frankel (and perhaps others) and ere being used for his o n personal benefit, and that First National thus as insolvent and thus as not qualified to enter an assumption reinsurance transaction. But for First National's misrepresentations, Peoples and Veterans ould not have entered into the Agreements and ould not have transferred the Fund to First National.  First National thus is liable to Peoples and Veterans for the injury they suffered as a result of their reliance on First National's misrepresentations.

2.    <u>"Money Had and Received" and Constructive Trust</u>.  The Fund or any portion of it that at any time as, is or may be in the possession or control of First National is the property of Peoples and Veterans for the benefit of its policyholders, is not property of the liquidation

8

estate of First National and should be returned to Peoples and Veterans as its rightful o ner. The

right to recover the Fund vested ith Peoples and Veterans at the time of First National's

rongdoing. Additionally, the Fund or any portion of the Fund in the control or possession of

First National or its Liquidator at any time constitutes a secured claim under Miss. Code Ann.

§ 83-24-7(p) and that security should be returned to Peoples and Veterans. The Fund as and

remains property of Claimants; and it is not and never has been the property of Franklin

American, First National, or their respective estates.

      3.      <u>Rescission</u>. Alternatively, the Agreement should be rescinded *ab initio* in that it

as void from the first, and the Fund in its entirety therefore should be returned to Peoples and

Veterans.

      4.      <u>Assumption of Liabilities to Policyholders by Liquidator</u>. Alternatively, Peoples

and Veterans are entitled to specific performance of the Agreements for an assumption and

novation of the policies subject thereto by the Liquidator unless the Fund is returned to Peoples

and Veterans.

      5.      <u>Conversion and Unjust Enrichment</u>. If the Liquidator of First National has

disposed of or used the Fund or does dispose of or use the Fund, or any portion of the Fund

through the Liquidator's compromise ith the other receivers or by any other means, then

pursuant to the doctrines of conversion and unjust enrichment, the estate of First National is or

ill be liable to Peoples and Veterans for the damages caused thereby. All such claims are

properly classified as Class 1 expenses of administration pursuant to Miss. Code Ann. § 83-24-

83(1). Alternatively, applicable tracing rules may sho that any portion of the Fund coming into

the possession or control of the Liquidator still remains there and is held for the benefit of

Peoples and Veterans.

6.    <u>Unconstitutionality of Priority Statutes</u>.  In the alternative, the Mississippi Priority Statute, Miss. Code Ann. § 83-24-83  as unconstitutional  hen the Agreements  ere entered,  hen the claims of Peoples and Veterans and  hen their right to the return of the Fund vested.  Although § 83-24-83 has since been amended to comply  ith the Constitution, any amendment cannot operate to deprive Peoples and Veterans of their vested rights in the Fund and under the Agreements.  Moreover, the unsecured claims of Peoples and Veterans also vested prior to the amendment and thus are not subject to the amended priority statute or its unconstitutional predecessor.  In addition, retroactive application of the amendment  ould result in an unconstitutional taking of Peoples' and Veterans' property  ithout benefit of due process of la ,  if and to any extent that the amendment other ise may apply to the claims of Peoples and Veterans.

7.    <u>Interest and Attorneys Fees</u>.  Claimants seek an a ard of interest and attorneys fees, as allo ed by la .

**Reservation of Rights Regarding Arbitration.**

Pursuant to Article V of the Master Agreement, Peoples and Veterans are entitled to submit all of their disputes  ith and claims against First National (and thus also its estate in liquidation as successor thereto) for full and binding arbitration of all issues.  Peoples and Veterans expressly reserve all of their rights regarding arbitration (or other ise) pursuant to the Agreements.

10

Date: June 28, 2000


Forrest B. Lammiman, Esq.
Attorney for Peoples Benefit Life Insurance
Company and Veterans Life Insurance Company
Lord, Bissell & Brook
115 S. LaSalle Street, Suite 3100
Chicago, Illinois  60603
Telephone: (312) 443-0414
Facsimile:  (312) 443-0336

Michael A. Eubanks
Vice President
Peoples Benefit Life Insurance Company
and Veterans Life Insurance Company
520 Park Avenue
Baltimore, Maryland 21201
Telephone: (410) 209-5485
Facsimile:  (410) 209-5926

11