IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

DEC 29 1999

J.T. NOBLIN, CLERK
BY_____ DEPUTY

PEOPLES BENEFIT LIFE INSURANCE
COMPANY AND VETERANS LIFE
INSURANCE COMPANY                                          PLAINTIFFS

VS.                                    CIVIL ACTION NO. 3:99CV537BN

GEORGE DALE, COMMISSIONER OF INSURANCE
OF THE STATE OF MISSISSIPPI IN HIS
CAPACITY AS LIQUIDATOR OF FIRST NATIONAL
LIFE INSURANCE COMPANY; FIRST NATIONAL
LIFE INSURANCE COMPANY; DOUGLAS SIZEMORE,
COMMISSIONER OF INSURANCE OF THE STATE OF
TENNESSEE IN HIS CAPACITY AS REHABILITATOR
OF FRANKLIN AMERICAN LIFE INSURANCE COMPANY;
FRANKLIN AMERICAN LIFE INSURANCE COMPANY;
THUNOR TRUST; LIBERTY NATIONAL SECURITIES;
JOHN A. HACKNEY; GENE L. MCKINNEY;
FRANCES Y. BURNETTE; DENNIS L. ROOS; WADE A.
WILLIS; JUDITH C. LOWERY; AND MARTIN R. FRANKEL          DEFENDANTS

OPINION AND ORDER

This cause is before the Court on motions to dismiss filed by

each of Defendants George Dale, Douglas Sizemore,[1] Thunor Trust,

John A. Hackney and Wade A. Willis.    The Court has considered the

motions, the responses of Plaintiffs, and the supporting and

opposing memoranda.    The Court finds that motions to dismiss of

---

[1] The Court has been informed that Ann Pope has been appointed
to succeeded Douglas Sizemore as the Tennessee Commissioner of
Insurance and as liquidator of Franklin American Life Insurance
Company.  The Court also notes that neither has moved to substitute
Pope for Sizemore as the party in interest pursuant to Rule 25 of
the Federal Rules of Civil Procedure.  The Court will, therefore,
continue to refer to the Tennessee Commissioner as Sizemore.

AO 72A
(Rev 8/82)

Defendants Dale and Sizemore should be granted in part. The motions to dismiss of Defendants Hackney, Thunor Trust and Willis are well taken and are hereby granted.

## I.  Background

Plaintiffs filed suit in this matter on July 30, 1999. The Complaint alleges the following facts. On October 30, 1998, the Plaintiff insurance companies entered into a reinsurance agreement with Defendant First National Life Insurance Company (hereinafter referred to as FNLIC). Plaintiffs decided to enter into the reinsurance agreement after consulting with the officers of FNLIC and Franklin American Life Insurance Company (hereinafter referred to as FALIC). Defendants Hackney and Willis are two of those officers. During the aforementioned consultations, certain representations were made regarding the financial stability of FNLIC, which Plaintiffs claim were false.[2] Pursuant to the reinsurance agreement, Plaintiffs transferred a group of insurance policies to FNLIC along with a fund totaling $14,689,593.00 (hereinafter referred to as the $14 million fund or the fund).

---

[2] Plaintiffs had already rejected FALIC as a potential reinsurer because its "financial rating" was not high enough. Complaint ¶ 20.

2

Defendant Thunor Trust owned, directly or indirectly, all of the stock in FNLIC and part of the stock in FALIC. Thunor Trust was itself established by Defendant Martin Frankel for the purpose of acquiring ownership interests in insurance companies. Frankel also owned Defendant Liberty National Securities, a firm with which the $14 million fund was allegedly deposited by FNLIC. This, Plaintiffs allege, put the fund under the complete control of Frankel. Sometime after the fund was deposited with Liberty National Securities, it "disappeared."[3] Plaintiffs allege that the officers of FNLIC knew, or should have known, not to trust Frankel with the fund.

Plaintiffs next allege that the reinsurance agreement was not to become effective until it was approved by the Mississippi Commissioner of Insurance, Defendant George Dale. However, at some point prior to receiving approval of the agreement, FNLIC was ordered into rehabilitation under the Mississippi Insurers Rehabilitation and Liquidation Act, Miss. Code Ann. § 83-24-1 et seq. (hereinafter referred to as the Mississippi Act). The rehabilitation was required because of the insolvency that resulted from the embezzlement of funds by Defendant Frankel. FNLIC was

---

[3] Frankel is under indictment for embezzling money from various insurance companies.

3

eventually ordered into liquidation under the Mississippi Act.[4]
The liquidation proceedings are presently pending in the Chancery
Court of Hinds County, Mississippi. Plaintiffs assert that because
the reinsurance agreement was never approved by Defendant Dale, the
agreement never became effective and that, therefore, the $14
million fund and insurance policies should be returned to
Plaintiffs.

Meanwhile, on May 11, 1999, FALIC was ordered into
receivership under the Tennessee Insurers Rehabilitation and
Liquidation Act, Tenn. Code Ann. § 56-9-101 et seq. (hereinafter
referred to as the Tennessee Act). Defendant Sizemore was given
regulatory and administrative control over FALIC. On October 25,
1999, subsequent to filing the motion to dismiss before this Court,
the Chancery Court for the Twentieth Judicial District, Davidson
County Tennessee, entered a Consent Final Order of Liquidation,
placing FNLIC in liquidation, which proceedings are now pending.[5]

---

[4] Defendant Dale was appointed Liquidator for FNLIC. He was
given control over all assets of FNLIC. FNLIC no longer exists
independently from Defendant Dale as Liquidator of the estate.
Therefore, the Court will consider them as a single entity for
purposes of the motion to dismiss filed by Defendant Dale, even
though they are named as separate defendants.

[5] This puts FALIC in a similar posture to that of FNLIC, and
the Court will accordingly consider FALIC and Sizemore as a single
entity for purposes of the present motion to dismiss. See supra
note 3.

4

Plaintiffs have alleged various state law causes of action, including: (1) assumpsit for money had and received, (2) breach of contract, (3) interference with contractual relations, (4) breach of trust, (5) negligent misrepresentation, (6) negligent entrustment, and (7) conversion. On each of these claims, Plaintiffs seek money damages in an amount equal to the $14 million fund. Plaintiffs also seek declaratory judgment relief on two issues: (1) that the $14 million fund is property of Plaintiffs and not property of the liquidation estate of FNLIC, and (2) that the fund was being held in trust by FNLIC.

## II. Discussion

### A. The Motions of Defendants Dale and Sizemore to Dismiss

The issues raised by Dale and Sizemore boil down to a question of whether this Court or the state courts, which have already exercised jurisdiction over the defunct FNLIC and FALIC, should decide who owns the $14 million fund, if and when it is ever recovered from Frankel. The answer to that question is that the state courts should decide who owns the fund. For the reasons stated below, therefore, the motions to dismiss of Defendants Dale and Sizemore are granted to the extent that the declaratory

AO 72A
(Rev.8/82)

judgment claims of Plaintiffs are dismissed. All further proceedings in this Court with regard to this case are stayed pending the state court liquidations of FNLIC and FALIC.

Defendant Dale, as Liquidator of FNLIC, raises the following issues: (1) whether the claims against FNLIC should be dismissed on abstention grounds; (2) whether the liquidation order of the Mississippi court, which contains an injunction purporting to prohibit the present suit from being commenced, controls, thereby giving the state court exclusive jurisdiction over the fund as an asset of the liquidation estate; and (3) whether federal jurisdiction over the claims raised by Plaintiffs is "reverse preempted" by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., by which Congress granted the states exclusive jurisdiction to regulate the insurance business. Finally, Dale asserts that the claims against the other defendants should be dismissed because, as causes of action belonging generally to all creditors of FNLIC, the right to bring such actions is vested in Dale as liquidator pursuant to the Mississippi Act.

AO 72A
(Rev.8/82)

For the most part, Sizemore raises arguments identical to those raised by Dale on behalf of FNLIC.[6]  Therefore, the Court will address the two motions concurrently.

**1) The Abstention Argument**

Defendants urge the Court to dismiss this cause under the abstention doctrine established by the United States Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315, 87 L. Ed 1424 (1943). Under that doctrine, federal courts should abstain from exercising jurisdiction over cases where to do so would infringe on "state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conservation Dist. V. United States, 424 U.S. 800, 814, 47 L. Ed. 2d 496 (1976).[7]  Plaintiffs, on the other hand, argue that the Supreme

---

[6] The Court notes that Sizemore added, as a ground for dismissal, failure to state a claim. The Court also notes that the only allegations in the complaint concerning FALIC are that the FALIC and FNLIC commingled funds and that the officers of FALIC, which were in large part also the officers of FNLIC, misrepresented the financial stability of FNLIC. However, as to the claims raised against FALIC the motion to dismiss is granted on other grounds, which makes it unnecessary to address this additional issue.

[7] Although Defendants argue that Burford and Colorado River provide separate doctrines of abstention, this Court finds that Colorado River is merely one in a line of cases that have developed the doctrine of abstention first established in Burford.

7

Court recently refined the <u>Burford</u> doctrine in such a way that disposes of Defendants' argument. <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 135 L. Ed. 2d 1 (1996).

In <u>Quackenbush</u>, the Insurance Commissioner of California, who had been appointed liquidator of the Mission Insurance Company and its affiliates, sued Allstate Insurance Company in state court in an effort to recover assets of the defunct company which were allegedly held by Allstate. <u>Id.</u> at 709. Particularly, the Commissioner sought damages on a breach of contract theory for the failure of Allstate to perform on certain reinsurance agreements. <u>Id.</u> at 729. Allstate counterclaimed for setoff of its own breach of contract claims against the plaintiff. <u>Id.</u> at 709. Allstate removed the case to federal court on diversity grounds. <u>Id.</u> The Commissioner moved for remand arguing that the court should abstain from hearing the case under <u>Burford</u> because resolution of the dispute, specifically the setoff claims, by the federal court would interfere with the regulation of the insolvency by the state of California under California law. <u>Id.</u>

In the <u>Quackenbush</u> opinion, the Supreme Court, through Justice O'Connor, discussed the development of the abstention doctrine over the years. <u>Id.</u> at 716-22. The Court noted that the abstention doctrine has its origin in the equity powers of the federal courts.

AO 72A
(Rev.8/82)

Id.   In particular, the Court stated that "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.'" Id. at 717 (quoting Fair Assessment in Real Estate Assn., Inc. v. McNary, 454 U.S. 100, 120, 70 L. Ed. 2d 271 (1981)(Brennan, J. concurring)).   The Court stated that "Burford allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'   Id. at 726-27 (citations omitted).   The decision whether to abstain from the exercise of jurisdiction in a given case:

> balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem'" ... and retaining local control over "difficult questions of state law bearing on policy problems of substantial public import," .... *This balance only rarely favors abstention, and the power to dismiss recognized in Burford represents an* "'*extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.*'"

Id. at 728 (citations omitted)(emphasis added).   The Court noted

9

that abstention principles had been applied to "actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether." Id. at 719. Finally, the Court stated the rule of law that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or *otherwise discretionary*." Id. at 731. (emphasis added). The Court held that, because the relief sought was of a legal nature, that is a damages action on a breach of contract theory, the district court's application of Burford to remand the case was "unwarranted." Id.

In a case with almost identical facts to those of Quackenbush, the United States Court of Appeals for the Fifth Circuit recognized that Quackenbush established that an action seeking damages never warrants abstention. Webb v. B.C. Rogers Poultry, Inc., 174 F.3d 697, 701 (5th Cir. 1999). The Fifth Circuit went on to say that Quackenbush imposes "an ironclad, per se bar to" dismissing or remanding a "damages action." Id. at 702.

There are two differences between the facts of the case sub justice and those of the Quackenbush case. First is the fact that Plaintiffs sued the Mississippi and Tennessee Commissioners of Insurance instead of visa versa. The second difference is that

10

Plaintiffs here seek declaratory judgment relief in addition to various tort damages. Otherwise, this Court is faced with an almost identical lawsuit in that it involves a dispute over assets of the liquidation estate, although Plaintiffs in this case raise an issue as to whether the fund is actually an asset of the estate in the first place.

Plaintiffs have alleged several damages claims, which this Court, under <u>Quackenbush</u>, clearly may not dismiss on abstention grounds. In particular, the Court may not abstain from hearing the damages claims based on breach of contract, interference with contractual rights, negligent misrepresentation, negligent entrustment, and conversion. Complaint, Prayer for Relief ¶¶ (B), (C), (E), (F), (G), and (H).

The Court is left with two questions. First, the Court must decide whether the two requests for declaratory relief contained in Paragraphs (A) and (D) of the Prayer for Relief are "otherwise discretionary" actions such that the Court may abstain under <u>Quackenbush</u>. The second question is whether the damages actions, from which the Court may not abstain, should be stayed pending the outcome of the state court liquidation and receivership proceedings.

This Court, through Judge Tom S. Lee, has recognized that "[a]n action for declaratory relief can be either legal or equitable, depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity." KLLM, Inc. Employee Health Protection Plan v. Ontario Community Hosp., 947 F. Supp. 262, 266 (S.D. Miss. 1996)(citations omitted). However, regardless of the nature of the underlying claim "[a] district court has broad, but not unfettered discretion to retain or dismiss a declaratory judgment suit." American States Ins. Co. v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998). In Wilton v. Seven Falls Co., 515 U.S. 277, 132 L. Ed. 2d 214 (1995), the United States Supreme Court stated that in determining whether to retain or dismiss a declaratory judgment action, a district court must consider "the scope of the pending state court proceeding ... [and] whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding," among other factors. Id. at 283. (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 86 L. Ed. 1620 (1942)). The Court went on to say that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." Id.

12

According to these precedents, this Court has broad discretion as to whether to entertain the requests for declaratory relief alleged by the Plaintiffs. Therefore, those two claims are such "otherwise discretionary" actions to which the abstention principles apply. <u>Quackenbush</u>, 517 U.S. at 731. The Court finds that <u>Burford</u> abstention is appropriate in this case to the extent Plaintiffs ask this Court to determine who owns the $14 million fund. By declining the opportunity to make this determination, the Court avoids interfering with "state efforts to establish a coherent policy with respect to a matter of substantial public concern," which in this case is the administration of the liquidation estates of FNLIC and FALIC. <u>Colorado River</u>, 424 U.S. at 814. This is especially true in light of the fact that the rehabilitation and liquidation statutes of Mississippi and Tennessee each provide procedures for litigating disputed claims, which provide an "opportunity for ventilation" of the claim Plaintiffs make to the $14 million fund. <u>Wilton</u>, 515 U.S. at 283. <u>See</u> Miss. Code Ann. § 83-24-77 and Tenn. Code Ann. § 56-9-327.

Plaintiffs argue that the state courts have no jurisdiction to administer their claim against FNLIC and FALIC because the $14 million fund is not an asset belonging to either company. Plaintiffs argue that since the reinsurance agreement was never

13

approved, the deal was never completed and the fund never became
property of FNLIC.   Plaintiffs assert that Defendants' arguments
for  abstention,  as  well  as  all  other  grounds  for  dismissal,
presuppose that the fund is an asset subject to administration in
the state proceedings.   Plaintiffs insist in their memoranda that
they are not asking this Court to order the fund returned to them,
but are simply asking this Court to declare that the fund belongs
to Plaintiffs.[8]  However, the Court finds that this argument itself
begs the very question that Plaintiffs want this Court to answer,
a question which the Court finds is more appropriately addressed by
the state courts.   The very purpose of the state statutes, at least
in the case of a liquidation, is to provide a mechanism for
determining what the assets of the insurer are, collecting those
assets and distributing those assets to the proper creditors.   As
further justification for this holding, the Court notes that the
Fifth Circuit has indicated that it will not accept the very
argument raised by Plaintiffs.   Munich American Reinsurance Co. v.

---

[8]  The  Court  notes  that  this  argument  is  not  completely
consistent  with  the  complaint.    In  the  Prayer  for  Relief,
Plaintiffs expressly ask the Court to declare that the "the fund
should  be  returned  to  [Plaintiffs]"  and  that  "[Plaintiffs]  are
entitled to its return."

14

Crawford, 141 F.3d 585, 594 n. 6 (5th Cir. 1998).  For these reasons, the Court finds that it should abstain from hearing the declaratory judgment claims of Plaintiffs.

As for the issue of staying the damages claims, Plaintiffs argue that a stay in this case would have the same effect as a dismissal.  It is true that at the end of the liquidation proceedings FNLIC and FALIC will no longer exist.  However, the Court notes that each of the damages claims made by Plaintiffs is for the exact same amount of damages, and is for an amount equal to the $14 million fund.  It is clear that the goal of the Plaintiffs is to get their money back from any of the Defendants and under any theory that may possibly work.  Therefore, it appears that Plaintiffs will be satisfied with return of the $14 million fund, regardless of source.  In light of this, and in the interest of judicial economy, the Court finds that it should await the outcome of the state court proceedings.  Plaintiffs should take advantage of the statutory mechanisms for litigating the claims against FNLIC and FALIC.  If the Court allowed Plaintiffs to proceed with litigation of their damages claims against FNLIC and FALIC at this point, the Court would essentially be making the very determination that it has already found to be more appropriately made by the state court.  It may very well be that the state court, or courts,

will determine the issue of ownership of the $14 million fund in favor of Plaintiff, in which case Plaintiffs may find it unnecessary to proceed with the federal litigation. On the other hand, after the state court proceedings are ended, the damages claims against the remaining Defendants will still exist if Plaintiffs have failed to recover everything they seek. The Court notes the concern of Plaintiffs that this holding will require them to litigate their claim to the fund in state court, but as discussed above, that is the more appropriate procedure. Moreover, with respect to overall judicial economy and efficient administration of the insurers' estates, it is more appropriate that all of the creditors of FNLIC and FALIC be required to litigate their claims against FNLIC and FALIC in a single forum, as opposed to the state liquidator or receiver being required to litigate claims in numerous forums. For these reasons, the Court finds that the appropriate course of action is to stay all further proceedings before this Court regarding the damages claims of Plaintiffs.

**2) The Reverse Preemption and State Court Injunction Arguments**

In addition to the abstention arguments discussed above, Defendants Dale and Sizemore also make two other arguments for dismissal of this action with respect to FNLIC and FALIC.

16

Defendants first argue that the diversity jurisdiction of this court is reverse preempted by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. The Court rejects this argument. The Fifth Circuit has repeatedly rejected the argument that the McCarran-Ferguson Act reverse preempts the diversity jurisdiction of federal courts. See Martin Ins. Agency v. Prudential Reinsurance Co., 910 F.2d 249, 254 (5th Cir. 1990); Munich American, 141 F.3d at 595 (5th Cir. 1998).

Next, Defendants argue that the state court liquidation and rehabilitation orders contained injunctions against the commencement of lawsuits which precluded Plaintiffs from instituting the present lawsuit and that this Court should give full faith and credit to the state court injunctions to bar the declaratory action claims of Plaintiffs. See e.g., United States v. Bank of New York & Trust Co., 296 U.S. 463, 477 (1936); Clark v. FitzGibbons, 105 F.3d 1049, 1051-52 (5th Cir. 1997). However, because the Court has dismissed the declaratory judgments claims on abstention grounds, it is unnecessary to decide this additional issue.

3) **The Argument for Dismissal of Claims Against Other Defendants**

Defendant Dale raises one final issue. He argues that the claims against all other Defendants, except Defendant Sizemore, are

AO 72A
(Rev 8/82)

claims held in general by all creditors of FNLIC against the officers of FNLIC, the Thunor Trust, Liberty National Securities and Martin Frankel. Dale argues that as Liquidator of the estate of FNLIC, and pursuant to Miss. Code Ann. § 83-24-41, he is vested with the exclusive power to "exercise and enforce all the rights, remedies and powers of any creditor ...." Miss. Code Ann. § 83-24-41(u). Dale argues that the damages claims of Plaintiffs against all other defendants, except Defendant Sizemore, fall under the purview of this exclusive power. The Court disagrees.

The Court finds that the damages claims of Plaintiffs are based on specific instances of alleged tortious conduct toward Plaintiffs. Plaintiffs do not seek redress for wrongs suffered equally by all creditors of FNLIC. Therefore, they are not causes of action vested in Defendant Dale. The Court thus denies Defendant Dale's Motion to Dismiss on this ground.

**B.  The Motions of Defendants Hackney, Thunor Trust and Willis to Dismiss**

Defendants John A. Hackney, Thunor Trust and Wade A. Willis each move this court to dismiss the claims against them for lack of personal jurisdiction. For the reasons below, the Court finds that the motions are well taken and are granted.

18

### 1) Personal Jurisdiction Generally

For a federal court sitting in diversity, as this Court is in this case, the determination of whether personal jurisdiction exists over a non-resident defendant requires a two step inquiry: (1) whether the long-arm statute of the state in which the federal court sits grants the court jurisdiction, and (2) if so, whether that grant of jurisdiction comports with due process. <u>Allred v. Moore & Peterson</u>, 117 F.3d 278, 281 (5th Cir. 1997). Therefore, "[a] federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." <u>Id.</u>

The Mississippi long-arm statute, Miss. Code Ann. § 13-3-57, states, in pertinent part, the following:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be ... subjected to the jurisdiction of the courts of this state.

A court may, therefore, exercise jurisdiction over a defendant under this statute only if one of three situations exist: (1) the defendant entered into a contract with a Mississippi resident, (2)

19

the defendant committed at least some element of a tort in Mississippi, or (3) the defendant did business in Mississippi. The jurisdiction conferred by the Mississippi long-arm statute is not coextensive with the limits of due process. <u>Allred</u>, 117 F.3d at 282. This means that a court must first analyze the scope of jurisdiction provided by the statute before an analysis of due process requirements is required. Because the Court finds that the Mississippi long-arm statute does not give the Court jurisdiction over Defendants Hackney, Thunor Trust and Willis, there is no need to discuss due process requirements for personal jurisdiction.

### 2) No Jurisdiction Over Defendants Hackney and Willis

Defendants Hackney and Willis are both residents of Tennessee. Hackney is the trustee of Thunor Trust, which owns all of the shares in FNLIC. Hackney is also a director of FNLIC. Willis is a director of FNLIC. Plaintiffs allege that Hackney and Willis, as directors of FNLIC committed the torts of negligent misrepresentation, negligent entrustment, and conversion of the $14 million fund. Plaintiffs also allege that Hackney, as trustee of Thunor trust interfered with the contractual rights of Plaintiffs.

The Court first notes that "[t]he existence of jurisdiction, pursuant to the Mississippi long-arm statute, over a corporate

20

defendant does not, in and of itself, confer jurisdiction over the corporation's officers." Moore Video Distributors v Quest Entertainment, 823 F. Supp. 1332, 1340 (S.D. Miss. 1993). There must exist independent grounds for exercising jurisdiction over the officers of a corporation. Id. Therefore, the Court must determine whether the Mississippi long-arm statute establishes jurisdiction over Hackney and Willis individually and independently. Of course, it is well settled that "'when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be held personally liable.'" Sourth Cent. Ins. Corp. v. Balboa Ins. Co., 747 F. Supp. 1213, 1215 (N.D. Miss. 1990)(quoting Mississippi Printing Co. v. Maris, West and Baker, Inc., 492 So. 2d 977, 978 (Miss. 1986)).

Defendants first argue that the long-arm statute does not confer jurisdiction over them in this case because the Plaintiffs themselves are corporations which, although they have qualified to do business in Mississippi, are not residents of Mississippi. Plaintiff Peoples Benefit Life Insurance Company is a Missouri corporation. Plaintiff Veterans Life Insurance Company is an Illinois corporation. However, the argument of Defendants is dispatched by C.H. Leavell & Co. v. Doster, 211 So. 2d 813 (Miss.

1968), in which the Supreme Court of Mississippi held that a foreign corporation qualified to do business in Mississippi was a resident of Mississippi for purposes of applying the long-arm statute, at least with respect to the tort prong of the statute. Id. at 814.[9] Therefore, at least with respect to the tort prong of the long-arm statute, Plaintiffs are residents of Mississippi for purposes of applying the statute to Hackney and Willis.

However, the allegations in the complaint, which the Court accepts as true for purposes of the present motions to dismiss,[10] do not establish this Court's jurisdiction over Hackney and Willis under any of the three prongs of the Mississippi long-arm statute. First, the complaint fails to allege that either Hackney or Willis personally entered into a contract with Plaintiffs.  The only contractual relationship referred to in the complaint is the one between Plaintiffs and FNLIC.  Any participation that Hackney or

---

[9] There is some question whether Plaintiffs are residents for purposes of applying the contract and "doing business" prongs of the Mississippi long-arm statute. See Smith v. DeWalt Prod. Corp., 743 F.2d 277, 279 (5th Cir. 1984)(holding that the "doing business" prong of the statute is not available to nonresidents).  However, the Court need not address this issue because Plaintiffs have not alleged that Defendants Hackney and Willis conducted any business or entered into any contracts in their individual capacity in Mississippi, and those prongs of the statute, therefore, do not apply.  See infra.

[10] See Latshaw v. Johnston, 167 F.3d 208 (5th Cir. 1999).

22

Willis had in that relationship was on behalf of, and in their capacities as corporate officers of, FNLIC. Second, the complaint fails to allege that either Hackney or Willis personally conducted business in Mississippi. Any business that Hackney or Willis may have conducted in Mississippi was on behalf of, and in their capacities as corporate officers of, FNLIC.

The application of the tort prong of the statute warrants a little more discussion. For this prong of the long-arm statute to confer jurisdiction, the defendant must commit a tort in whole or part within the geographical boundaries of Mississippi. However, the rule is well settled that "with respect to Mississippi's long-arm statute[,] a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury." <u>Cycles, Ltd. v. W.J. Digby, Inc.</u>, 889 F.2d 612, 619 (5th Cir. 1989). Of the various tort claims Plaintiffs make against Hackney and Willis, as well as other named defendants, not a single one is alleged to have occurred in Mississippi. In fact, the allegations of the complaint, particularly with respect to misrepresentation and conversion, fail to allege where the torts occurred. Not even the damages element of any of the torts alleged in the complaint could have occurred in Mississippi. The only damage alleged by Plaintiffs is loss of the $14 million fund.

23

However, according to the discovery disclosures provided by Plaintiffs, the fund was transferred from a bank in Maryland to a bank in Tennessee. Therefore, the $14 million fund was never in Mississippi, and the damage incurred by Plaintiffs necessarily occurred outside Mississippi. The damage that Plaintiffs assert occurred in Mississippi, that is the economic effect that the loss of the fund has had, or may have, on Mississippi policyholders and Plaintiffs, amounts only to the "economic consequences" of the loss of the  fund, which is not sufficient for the long-arm statute to apply. Cycles, Ltd., 889 F.2d at 619. For these reasons, the Court finds that the Mississippi long-arm statute does not give this Court jurisdiction over Defendants Hackney and Willis, and their motions to dismiss for lack of personal jurisdiction are hereby granted.

### 3) No Jurisdiction Over Defendant Thunor Trust

The analysis of this Court's jurisdiction over Thunor Trust differs from the analysis above in only one respect. Thunor Trust is the sole shareholder of FNLIC. If the corporate veil of FNLIC could be pierced, which the Court finds may not be done in this case, Thunor Trust would be held accountable on the contract between Plaintiffs and FNLIC, thus giving the Court jurisdiction over Thunor Trust under the contract prong of the Mississippi long-

24

arm statute.   Otherwise, Plaintiffs have failed to allege that Thunor Trust independently committed a tort, or any element of a tort, in Mississippi.  Plaintiffs also failed to allege that Thunor Trust has conducted any business in Mississippi.  To the contrary, the complaint expressly alleges that Thunor Trust is a Tennessee corporation with its principal place of business in Tennessee.

Under Mississippi law, in order to pierce the veil of a corporation and impose personal liability on the shareholders, the plaintiff must show three things: (1) a frustration of the legitimate expectations of the plaintiff regarding the entity to whom he looked for contract performance; (2) a flagrant disregard for the corporate formalities by the principals of the corporation and; (3) some indication of fraud or equivalent malfeasance by the corporate principals. Gray v. Edgewater Landing, Inc., 541 So. 2d 1044, 1047 (Miss. 1989).  Plaintiffs have not alleged that the principals of FNLIC disregarded corporate formalities.  In fact, not only have Plaintiffs not alleged that FNLIC is a sham corporation, they have relied upon the validity of the FNLIC corporate entity by alleging causes of action against FNLIC.

Paragraph 47 of the complaint, which alleges that Thunor Trust is a sham organization totally controlled by Martin Frankel, is the only allegation in the complaint that comes close to alleging that

25

any corporate veil should be pierced.    However, this does not affect the analysis above because that allegation would only allow the Court to hold Frankel liable on a claim against Thunor Trust. The  FNLIC corporate veil is still intact.    For these reasons, the Court finds that the motion to dismiss of Thunor Trust is well taken and is hereby granted.

### III. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the motions to dismiss of Defendants Dale [13-1] and Sizemore [28-1] are granted to the extent that the declaratory judgment claims of Plaintiffs contained in Paragraphs (A) and (D) of the Prayer for Relief of the Complaint are hereby dismissed.

IT IS THEREFORE FURTHER ORDERED that all proceedings before this Court with regard to this case are hereby stayed pending the outcome of the FNLIC and FALIC liquidation proceedings pending before state courts in Mississippi and Tennessee respectively.

IT IS THEREFORE FURTHER ORDERED that the motions to dismiss of Defendants Hackney [27-1], Thunor Trust [25-1], and Willis [37-1] are hereby granted.

SO ORDERED this the 29th day, of December, 1999.

_____

UNITED STATES DISTRICT JUDGE