

537 N.E.2d 775  Page 1
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

Supreme Court of Illinois.
In re Liquidation of SECURITY CASUALTY COMPANY (John E. WASHBURN, Director of Insurance, Appellant, v. Peter DYSON, et al., Appellees).
No. 66827.

March 29, 1989.

Defrauded shareholders of insurance company undergoing liquidation filed proof of claim, requesting imposition of constructive trust on proceeds of stock offering. The Circuit Court, Cook County, granted requested relief. The Director of Insurance and several intervenors appealed. Allowing motion for direct appeal, the Supreme Court, Miller, J., held that exclusive scheme of Insurance Code for distribution of proceeds of liquidation precluded imposition of constructive trust for benefit of defrauded shareholders.

Reversed and remanded.

West Headnotes

**[1] Insurance** 1414
217k1414 Most Cited Cases
(Formerly 217k72.9)
Exclusive scheme of Insurance Code for determining priorities in distribution of proceeds from liquidation of insurance company precluded imposition of constructive trust on proceeds of stock offering for benefit of defrauded shareholders in liquidation proceeding; stock offering proceeds, while encumbered by shareholders' equitable claim, were nonetheless subject to distribution as "general assets" of company and therefore subject to priority schedule provided in Insurance Code and type of claim being asserted by shareholders was properly deemed "proprietary claim," within meaning of Code. S.H.A. ch. 73, ¶ 817(1)(f).

**[2] Trusts** 94.5
390k94.5 Most Cited Cases
(Formerly 390k941/2)

**[2] Trusts** 102(1)
390k102(1) Most Cited Cases
"Constructive trust" is equitable remedy imposed by court to prevent unjust enrichment of party through actual fraud or breach of fiduciary relationship.

**\*\*776 \*435 \*\*\*447** Samuel K. Skinner, James R. Stinson and Robert T. Biskup, Sidley & Austin, Chicago, for appellant Director of Ins.

R.R. McMahan, Rowe W. Snider and Timothy M. Maggio, Lord, Bissell & Brook, Chicago, for intervenor-appellant Ill. Ins. Guaranty Fund.

Marc J. Chalfen, DeHaan & Richter, P.C., Chicago, Karl L. Rubinstein, Jeffrey L. Wood, Robert H. Nunnally, Jr., Murray J. Rossini, Rubinstein & Perry, Dallas, Texas, for intervenor-appellant Tex. Property and Casualty Guaranty Assn.

William G. Swindal, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, for intervenor-appellant nonresident guaranty funds.

**\*436** James E. O'Halloran, O'Halloran, Walker, Kosoff & Miller, John O. Demaret, John O. Demaret & Associates, Northbrook, Richard M. Meyer, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for appellees.

Kahn, Robinson & Curley, Chicago, Carole J. Olson, Kansas City, Mo., for amicus curiae Nat. Assn. of Ins. Commissioners.

Justice MILLER delivered the opinion of the court:

The question presented by this appeal concerns the priority to be accorded to the claims of defrauded shareholders of an insurance company that is undergoing liquidation pursuant to the Illinois Insurance Code (Ill.Rev.Stat.1987, ch. 73, pars. 613 through 1065.906). A class of shareholders of Security America Corporation was permitted to intervene in liquidation proceedings brought by the Director of Insurance against Security Casualty Company, a domestic company and a wholly owned subsidiary of Security America. The Security America shareholders had established, in a separate action in Federal court, the commission of securities law violations by Security America and its directors in connection with a public offering and sale of Security America stock. The shareholders filed a proof of claim in the liquidation proceedings, requesting the imposition of a constructive trust on proceeds of the Security America stock offering that were in the possession of Security Casualty. A judge

537 N.E.2d 775                                                                                                                                           Page 2
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

of the circuit court of Cook County agreed with the shareholders and imposed a constructive trust on almost $8 million of the Security Casualty estate; the circuit judge denied the shareholders' request for prejudgment interest on their claim. The Insurance Code accords claims of shareholders lowest priority in ***437** distribution from the ****777 *****448** assets of a company in liquidation, and the effect of the circuit court's decision was to advance the shareholders' claims ahead of all others. The present appeal, challenging the imposition of the constructive trust, is brought by the Director of Insurance, in his capacity as liquidator of Security Casualty Company, and by the Illinois Guaranty Fund, the Texas Property and Casualty Guaranty Association, and certain other nonresident State insurance guaranty funds and associations, intervenors in the proceedings below. As cross-relief, the shareholders contend that the circuit judge erred in denying their request for prejudgment interest. We allowed the parties' motion for a direct appeal to this court under Rule 302(b) (107 Ill.2d R. 302(b)).

The facts giving rise to the instant appeal are not in dispute. In 1980 the Department of Insurance informed Security Mutual Casualty Company, a domestic entity, that the company would face sanctions, and would possibly be liquidated, if it failed to increase its capital by year-end. Security Mutual was a direct writer of automobile insurance policies and also was a reinsurer under a variety of treaties. To raise the required capital, the directors of Security Mutual decided to "demutualize" the company and convert it to stock ownership. Under the demutualization plan developed by management, Security Mutual was to change its name to Security Casualty Company; a holding company, Security America Corporation, was to be formed; and Security America was to sell stock to the public and use the proceeds to purchase all the shares of Security Casualty. The public offering of Security America stock was made in November 1980, and some 2.75 million shares were sold at a price of $6 per share, raising $16.5 million. After paying underwriting and brokerage fees, Security America transferred the net proceeds, about $14.2 million, to Security Casualty in exchange for all the shares of stock of Security Casualty. The two companies **\*438** were controlled by the same management, and Security America had no business activities apart from its ownership of Security Casualty.

On August 14, 1981, the Director filed a complaint in the circuit court of Cook County seeking liquidation or rehabilitation of Security Casualty. The Director alleged that Security Casualty was insolvent and had a negative net worth of $20 million. The board of directors of Security Casualty voted to submit voluntarily to rehabilitation proceedings, and on August 17, 1981, an agreed order was entered appointing the Director rehabilitator of the company. About two months later, on October 14, 1981, the Director filed an amended complaint for liquidation of the company with a finding of insolvency. Security Casualty opposed the action, denying that it was insolvent and moving for dismissal of the complaint. On December 4, 1981, the circuit court entered an order of liquidation with a finding of insolvency and authorized the Director to liquidate Security Casualty. Later that month the circuit court entered an order setting a deadline of July 31, 1982, for the submission of claims against the estate of Security Casualty.

Before the rehabilitation proceedings were initiated, shareholders of Security America Corporation had brought actions against the company alleging fraud in the sale of its shares. The Securities and Exchange Commission halted trading in Security America stock on April 20, 1981, and a number of suits were filed by Security America shareholders in the months following. The actions were consolidated in the United States District Court for the Northern District of Illinois in a proceeding entitled *In re* Security America Corporation Securities Litigation, No. 81-C-3910 (hereinafter, the Federal action). The shareholders subsequently filed a consolidated complaint, asserting violations of several Federal and State securities laws. The gravamen of the shareholders' action was **\*439** that the registration statement and prospectus used in connection with Security America's stock sale contained misstatements and omissions of material fact concerning the business activities and financial condition of Security America and its subsidiary, Security Casualty. Named as defendants in the shareholders' action were Security America Corporation and its directors, **\*\*778 \*\*\*449** the Director of Insurance, in his capacity as liquidator of Security Casualty, the underwriters of the Security America stock offering, and the accounting firm that had certified the financial statements appearing in the registration statement and prospectus. In May 1982 the Federal district judge certified the class and certain class representatives. The class consisted of investors who had purchased Security America stock during the period from November 20, 1980, the date of the initial public offering, through April 19, 1981, the day before trading in the stock was halted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-00889-EBB   Document 50-4   Filed 06/03/2005   Page 3 of 8

537 N.E.2d 775                                                                                                          Page 3
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

On July 7, 1982, the shareholders moved to intervene in the Security Casualty liquidation proceedings in circuit court and filed a proof of claim. In their proof of claim the shareholders maintained that the net proceeds of the Security America stock sale had been transferred to Security Casualty, and they asked for the imposition of a constructive trust on the funds. Relying on the allegations of securities law violations at issue in the pending Federal class action, the shareholders contended that the stock sale had been effected through fraudulent means and that the proceeds of the sale therefore should not be deemed part of Security Casualty's estate for purposes of distribution under the Insurance Code. The shareholders instead asked that the funds be impressed with a constructive trust for their benefit. On July 13, 1982, the circuit court allowed the shareholders' motion to intervene in the liquidation proceedings.

In an order entered July 20, 1984, *nunc pro tunc* July 26, 1983, the circuit judge lifted previously entered orders **\*440** staying the proceedings in the Federal action but retained exclusive jurisdiction over the priority and constructive trust issues. The circuit court's order permitted the shareholders to pursue the merits of their Federal action against Security America. On November 1, 1985, the Federal district court granted the shareholders summary judgment against Security Casualty on count III of the consolidated complaint; count III alleged violations of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j (1976)) and of rule 10b-5, promulgated thereunder. The district court's order came in the wake of an extensive stipulation entered into by the shareholders and the Director, as liquidator of Security Casualty, concerning the parties' misconduct in connection with the Security America stock offering. The district judge found that the Security America registration statement and prospectus contained false statements and omissions of material fact; that Security Casualty, through its agents, had acted with the intent to deceive, manipulate, and defraud investors; that the representative class plaintiffs had detrimentally relied on the material misstatements and omissions in the Security America registration documents; and that the shareholders had established Security Casualty's violations of section 10(b) of the Securities Exchange Act of 1934 and of rule 10b-5. On July 15, 1986, the district judge entered judgment of $15,184,950.66 in favor of the shareholders and against Security America and Security Casualty.

Following entry of the district court's judgment, the shareholders returned to circuit court to enforce the award. On August 20, 1986, the shareholders filed a motion in the Security Casualty liquidation proceedings seeking imposition of a constructive trust. The shareholders asked the circuit judge to declare that the Director, as liquidator, was holding in trust funds received by Security Casualty from the Security America stock offering. **\*441** The shareholders requested a judgment of $7,799,950.66, which represented the unsatisfied portion of the Federal judgment, after the deduction of a total of $7,385,000 received by the shareholders in settlement of their claims against a number of other defendants.

The shareholders' motion for imposition of a constructive trust was opposed by the Director and by the Illinois Insurance Guaranty Fund, the Texas Property and Casualty Guaranty Association, and certain nonresident State insurance guaranty funds and associations, whose requests to intervene in the liquidation proceedings had previously been allowed. In an order entered February 8, 1988, the circuit judge **\*\*779 \*\*\*450** granted the shareholders their requested relief. The judge ruled that through Federal securities law violations identifiable funds of the shareholders had come into the possession of Security Casualty, and then into the possession of the Director, as liquidator of the company. Because a constructive trust arises as the impropriety occurs, the circuit judge ruled that Security Casualty never obtained equitable title to the funds, and the judge concluded that the funds were not subject to distribution under section 205. The circuit judge therefore entered judgment of $7,799,950.66 in favor of the shareholders. The court denied the shareholders' request for prejudgment interest, interpreting an earlier order entered by a different judge as foreclosing such an award.

The Director of Insurance, intervenors Illinois Insurance Guaranty Fund, Texas Property and Casualty Guaranty Association, and certain nonresident State insurance guaranty funds and associations, and *amicus curiae* National Association of Insurance Commissioners argue that the assets of Security Casualty must be distributed in accordance with the schedule of priorities contained in section 205(1) of the Insurance Code. That provision accords lowest priority to the "[p]roprietary claims of shareholders, **\*442** members, or other owners." (Ill.Rev.Stat.1987, ch. 73, par. 817(1)(f).) Those parties maintain that the statute provides a comprehensive and exclusive scheme of distribution, and they contend that other forms of relief inconsistent with its provisions, such as the

Case 3:02-cv-00889-EBB    Document 50-4    Filed 06/03/2005    Page 4 of 8

537 N.E.2d 775                                                                                                                                    Page 4
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

constructive trust imposed by the circuit judge in this case, are not available in insurance liquidation proceedings.

[1] Whether the Insurance Code precludes imposition of a constructive trust for the benefit of defrauded shareholders in a liquidation proceeding, as the Director and intervening guaranty associations contend, is a question of statutory interpretation. Our role in this regard is to ascertain and give effect to the intention of the legislature. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill.2d 353, 364, 119 Ill.Dec. 360, 522 N.E.2d 1219; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill.2d 336, 340-41, 85 Ill.Dec. 508, 473 N.E.2d 1313.) Such an inquiry requires an examination of the entire statute and a consideration of the purposes of the legislation. (*In re Petition of the Village of Kildeer to Annex Certain Territory* (1988), 124 Ill.2d 533, 545, 125 Ill.Dec. 333, 530 N.E.2d 491; *Chastek v. Anderson* (1981), 83 Ill.2d 502, 511, 48 Ill.Dec. 216, 416 N.E.2d 247.) For the reasons discussed below, we agree with the Director and the guaranty associations that under our State's statutory scheme a constructive trust could not be imposed for the benefit of the defrauded shareholders. We therefore reverse the judgment of the circuit court imposing a constructive trust.

Under section 191 of the Insurance Code, the Director of Insurance "shall be vested by operation of law with the title to all property, contracts and rights of action of the company as of the date of the order directing * * * liquidation." (Ill.Rev.Stat.1987, ch. 73, par. 803.) Section 210(1) of the Code provides that, following the deadline for submission of claims against the company's estate, the circuit court may, upon application of the Director, authorize the payment of "one or more dividends upon all **\*443** claims allowed in accordance with the priorities established in Section 205." (Ill.Rev.Stat.1987, ch. 73, par. 822(1).) Section 205 provides, in pertinent part:

"(1) The priorities of distribution of general assets from the company's estate is [*sic*] to be as follows:
(a) The costs and expenses of administration, including the expenses of the Illinois Insurance Guaranty Fund, the Illinois Life and Health Insurance Guaranty Association, the Illinois Health Maintenance Organization Guaranty Association and of any similar organization in any other state as prescribed in subsection (c) of Section 545.
(b) Wages actually owing to employees for services rendered within three months prior to the date of the filing of the delinquency petition, not exceeding three-hundred dollars to each employee and secured claims, including claims for **\*\*780 \*\*\*451** taxes and debts due the federal or any state or local government which are secured by liens perfected prior to the commencement of delinquency proceedings.
(c) Claims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the company, and claims of the Illinois Insurance Guaranty Fund, the Illinois Life and Health Insurance Guaranty Association, the Illinois Health Maintenance Organization Guaranty Association and any similar organization in another state as prescribed in Sections 542 and 545.
(d) All other claims of general creditors not falling within any other priority under this Section including claims for taxes and debts due the federal government or any state or local government which are not secured claims.
(e) Claims of guarantee fund certificate holders, guarantee capital shareholders and surplus note holders.
(f) Proprietary claims of shareholders, members, or other owners." (Ill.Rev.Stat.1987, ch. 73, par. 817.)

**\*444** Section 205(1) establishes a rule of absolute priority. Under the provision, no succeeding class of claimants may share in the distribution of assets until the allowed claims of all senior interests have been satisfied in full. (*In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill.2d 555, 558, 120 Ill.Dec. 508, 524 N.E.2d 538.) Section 205(1)(f) accords claims of shareholders the lowest priority. It can be seen that the effect of the circuit court's decision in this case, imposing a constructive trust on Security Casualty's estate for the benefit of the shareholder class, is to boost the shareholders' claims over those in the statutory priority ladder, granting the shareholders a super-priority ahead of all other claimants in the liquidation proceedings.

The schedule of priorities now contained in section 205 is far more detailed than it once was. Before the 1975 amendment that gave the statute its current form, section 205 simply provided that, in cases of liquidation, employee wage claims of less than $300 arising within three months of liquidation "shall be paid as soon as possible after liquidation has been commenced, after reserving funds for the expenses of administration." (Ill.Rev.Stat.1975, ch. 73, par. 817.) No particular sequence of distribution was specified for other debts and claims. At that time, section 210(1) provided that, following the deadline for the

submission of claims, the circuit court could authorize the Director "to declare out of the funds remaining in his hands after the payment of expenses, one or more dividends upon all claims allowed. Such order shall specify what claims, if any, are entitled to priority of payment." (Ill.Rev.Stat.1975, ch. 73, par. 822.) Effective December 18, 1975, the legislature amended section 205 to substantially its current form, providing six separate classes of priorities. (See Ill.Rev.Stat., 1976 Supp., ch. 73, par. 817(1).) At the same time, the legislature amended section 210(1) to require that the **\*445** distribution of assets in satisfaction of claims be made "in accordance with the priorities established in Section 205." Ill.Rev.Stat., 1976 Supp., ch. 73, par. 822(1).

Section 205(1) of the Insurance Code now provides a comprehensive scheme for the distribution of assets of an insurance company undergoing liquidation. Nothing in the Code suggests that relief other than that specified in section 205 would be available to claimants in liquidation proceedings. Section 191 of the Code vests the Director "by operation of law with the title to all property, contracts and rights of action of the company as of the date of the order directing * * * liquidation." (Ill.Rev.Stat.1987, ch. 73, par. 803.) No distinction is drawn between legal title and equitable title. Section 210(1) of the Code requires that the distribution of the company's assets be "in accordance with the priorities established in Section 205." (Ill.Rev.Stat.1987, ch. 73, par. 822(1).) Again, there is no suggestion that the availability of other forms of relief inconsistent with the priorities of section 205(1) was contemplated by the legislature.

Section 205(1) divides the universe of potential claimants against a liquidated company's estate into six separate classes. **\*\*781 \*\*\*452** The statute grants top priority to payment of the costs and expenses of administering the estate. Next in line are wage claims of employees of the company in liquidation, subject to certain limitations, and secured claims, including Federal, State, and local tax liens. In third place are the claims of policyholders, beneficiaries, and insureds, liability claims against insureds, and claims of insurance guaranty funds and associations. In fourth place are the claims of general creditors, included unsecured tax claims. The statute accords fifth priority to holders of guarantee fund certificates, guarantee capital shareholders, and surplus note holders. Finally, the statute accords sixth, and last, priority to **\*446** "[p]roprietary claims of shareholders, members, or other owners." Ill.Rev.Stat.1987, ch. 73, par. 817(1)(f).

We believe that the funds that the shareholders seek to have impressed with a constructive trust should be deemed to be assets of the company in liquidation, and that the claims of the shareholders should be deemed to be subject to the priority schedule provided by section 205. The judgment expressed in section 205(1) of the Insurance Code of subordinating the claims of shareholders to the claims of policyholders and creditors in an insurance liquidation proceeding fulfills rather than defeats the expectations of investors, lenders, and insureds. Both investors and lenders expose themselves to the risk of business insolvency, but only investors should be deemed to assume the additional risk of the illegal or fraudulent issuance of securities. (See Slain & Kripke, *The Interface Between Securities Regulation and Bankruptcy-- Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors,* 48 N.Y.U.L.Rev. 261, 286-87 (1973).) Indeed, the insureds, the customers of the insurance business, are seeking to insulate themselves from risk. At the same time that investors risk their capital, they may expect to reap greater rewards if the enterprise prospers. Because illegally issued stock is voidable only at the shareholder's option, claims for rescission by defrauded investors will arise only if the enterprise founders or the stock performs poorly. In *In re Stirling Homex Corp.* (2d Cir.1978), 579 F.2d 206, 213, the court stated:

> "Where the debtor corporation is insolvent and is about to undergo complete liquidation, the equities favor the conventional general creditors rather than the allegedly defrauded stockholders. In such circumstances, '[t]he real party against which [the stockholders] are seeking relief is the body of general creditors of their corporation. Whatever relief may be granted to them in this case **\*447** will reduce the percentage which the general creditors will ultimately realize upon their claims.' [Citation.] We will not allow stockholders whose claims are based solely on the alleged fraud that took place in the issuance of stock to deplete further the already meager pool of assets presently available to the general creditors. [Citations.] In so deciding, we heed the observation made many years ago by the Eighth Circuit: 'When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion.' "

Imposing a constructive trust in this case for the benefit of the defrauded shareholders advances their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-00889-EBB    Document 50-4    Filed 06/03/2005    Page 6 of 8

537 N.E.2d 775                                                                                                                  Page 6
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

claims ahead of the claims of Security Casualty's policyholders and creditors. Such a recovery by the shareholders diminishes the pool of assets available for distribution to other claimants. In effect, it shifts the risk of illegally or fraudulently issued securities from the investors, where the risk properly lies, to other, equally innocent parties who chose not to expose themselves to the potential burdens and benefits of owning stock in the enterprise. Faithful adherence to the legislature's schedule of priorities in section 205(1) will preclude such a result.

[2] Because the legislature has provided a comprehensive statutory scheme governing the distribution of assets from a liquidated insurer's estate, equitable relief different from that provided by statute was not available to the shareholders. A constructive **782 ***453 trust is an equitable remedy imposed by a court to prevent the unjust enrichment of a party through actual fraud or breach of a fiduciary relationship. (Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co. (1986), 114 Ill.2d 278, 293, 102 Ill.Dec. 306, 499 N.E.2d 1319; Ray v. Winter (1977), 67 Ill.2d 296, 303, 10 Ill.Dec. 225, 367 N.E.2d 678; Hofert v. Latorri (1961), 22 Ill.2d 126, 130, 174 N.E.2d 866.) "Equity follows the law," and the legislature is, of course, empowered to limit the availability of equitable remedies. *448(First Federal Savings & Loan Association v. Walker (1982), 91 Ill.2d 218, 226-27, 62 Ill.Dec. 956, 437 N.E.2d 644; Stone v. Gardner (1858), 20 Ill. 304, 309; Krug-Etheridge v. Krug (1982), 111 Ill.App.3d 780, 782-83, 67 Ill.Dec. 454, 444 N.E.2d 690.) In Stone v. Gardner (1858), 20 Ill. 304, 309, the court stated:

> "We do not know of any power existing in a court of equity to dispense with the plain requirements of a statute; it has been always disclaimed, and the real or supposed hardship of no case can justify a court in so doing. When a statute has prescribed a plain rule, free from doubt and ambiguity, it is as well usurpation in a court of equity as in a court of law, to adjudge against it; and for a court of equity to relieve against its provisions, is the same as to repeal it."

In light of our conclusion that the liquidation provisions of the Insurance Code provide the exclusive scheme for determining priorities in distribution, it follows that equitable relief, such as a constructive trust, is precluded. The circuit judge therefore could not avoid the effect of the statutory scheme by imposing a constructive trust on Security Casualty's assets. For that reason, we find inapplicable the cases cited by the shareholders in which courts have impressed assets with constructive trusts, granting trust claimants rights superior to those of creditors in the absence of controlling statutory authority to the contrary. See, *e.g.,* Mauricau v. Haugen (1944), 387 Ill. 186, 56 N.E.2d 367; East St. Louis Lumber Co. v. Schnipper (1923), 310 Ill. 150, 141 N.E. 542; Sparrow v. Wilcox (1916), 272 Ill. 632, 112 N.E. 296.

In a series of arguments the shareholders attempt to show that various provisions of the Insurance Code suggest the inapplicability of section 205(1) to the circumstances here. Section 205 governs the distribution of what are termed the "general assets" of the company in liquidation. The shareholders contend that the proceeds of the stock offering are not properly considered "general assets" for purposes of that provision. The shareholders *449 rely on the definition of "general assets" appearing in section 221.1 of the Insurance Code. Section 221.1(6) provides,

> " 'General Assets' means all property, real or personal, not specifically mortgaged, pledged, deposited as security or otherwise encumbered, and as to such specifically encumbered property the term includes all in excess of the amount necessary to discharge the sum or sums secured." (Ill.Rev.Stat.1987, ch. 73, par. 833.1(6).)

The definition excludes property that is mortgaged or otherwise encumbered. The shareholders maintain that the stock-offering proceeds, encumbered with an equitable claim, were not subject to distribution as "general assets."

The definition relied on by the shareholders does not apply here, which involves a proceeding under article XIII of the Insurance Code. (Ill.Rev.Stat.1987, ch. 73, pars. 799 through 833.) As the shareholders acknowledge, the definition of general assets quoted above is taken from a different article of the Insurance Code, article XIII 1/2. (See Ill.Rev.Stat.1987, ch. 73, pars. 833.1 through 833.13.) The definition is expressly limited to the provisions of that article; section 221.1 provides, "For the purposes of Sections 221.1 to 221.10, both inclusive, the following terms have the following meanings." (Ill.Rev.Stat.1987, ch. 73, par. 833.1) Moreover, it is clear that the term "general assets," as it is used in section 205, does not exclude encumbered property. Section 205(1)(b) expressly provides a priority in distribution for the claims of secured creditors, who, by definition, assert a claim to an encumbered asset. (See Ill.Rev.Stat.1987, ch. 73, par. **783 ***454 817(1)(b).) Thus, literal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-00889-EBB   Document 50-4   Filed 06/03/2005   Page 7 of 8

537 N.E.2d 775                                                                                                    Page 7
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

application of section 221.1 to the priority scheme would render meaningless that portion of the priority ladder. Accordingly, we do not believe that the term "general assets" ***450** affords the shareholders a means of escaping application of section 205.

The shareholders next observe that section 205(1)(f) applies only to the "[p]roprietary claims of shareholders, members, or other owners," and they contend that they are not asserting a proprietary claim here. We agree with the shareholders that the General Assembly, by referring to proprietary claims of shareholders, intended to focus on the nature of the claim rather than the identity of the claimant. But we do not believe that the distinction benefits the shareholder-claimants here. Under the statute, the separate claims of a person who happened to be both a shareholder and policyholder of an insurance company in liquidation would be afforded different treatment. His claim as a policyholder would be processed under section 205(1)(c), and his claim as a shareholder of the enterprise would be processed under section 205(1)(f). The different claims of a shareholder would not all be relegated to the lowest priority simply because the person happened to be a shareholder. The type of claim being asserted by the shareholders in this case is properly deemed a proprietary claim.

The shareholders also point out that the Insurance Code and other provisions of Illinois law provide remedies similar to those afforded by the Federal securities provisions under which the shareholders recovered in their Federal action here. Sections 147.1 and 147.2 of the Insurance Code require certain disclosures in the offering of securities of Illinois domiciled insurance companies. (Ill.Rev.Stat.1987, ch. 73, pars. 759.1, 759.2.) Similar requirements also appear in sections 12 and 13 of the Illinois Securities Law of 1953 (Ill.Rev.Stat.1987, ch. 121 1/2, pars. 137.12, 137.13). Remedies under those provisions include rescission and awards of damages. The shareholders believe that the availability of those forms of relief in the Insurance Code and in the Illinois ***451** Securities Law suggests that the legislature intended to allow recoveries of that nature to go forward without regard to the priorities expressed in section 205(1) of the Insurance Code.

We do not agree. Given the availability of those forms of relief under the Insurance Code, the legislature's failure in section 205 to accord claims of that nature a special or higher priority is all the more telling. As we have seen, the drafters assigned lowest priority to "[p]roprietary claims of shareholders, members, or other owners."

In the written decision granting the shareholders' motion for a constructive trust, the circuit judge cited a Federal bankruptcy case, *In re Teltronics, Ltd.* (7th Cir.1981), 649 F.2d 1236, and a provision of the Federal Bankruptcy Code, section 541(d), in support of his ruling. Our review of those and other authorities, however, persuades us that bankruptcy law supports our decision in this case.

Addressing the appropriate treatment of claims of defrauded shareholders in corporate reorganization and liquidation proceedings, commentators had suggested that shareholders' claims should be subordinated to those of creditors. (See Slain & Kripke, *The Interface Between Securities Regulation and Bankruptcy--Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors,* 48 N.Y.U.L.Rev. 261 (1973).) Congress expressly adopted that view in section 510(b) of the Bankruptcy Reform Act of 1978. (See H.R.Rep. No. 595, 95th Cong., 1st Sess. 194-96, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6154-57 (section 510(b) based on views of Professors Slain and Kripke).) Section 510(b) provides:

> "For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, **\*452** or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests **\*\*784 \*\*\*455** that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b) (Supp. IV 1986).

Similar results had obtained in cases involving claims of shareholders in cases decided under prior law, before the enactment of section 510(b) of the Bankruptcy Reform Act of 1978. (See, *e.g., In re THC Financial Corp.* (9th Cir.1982), 679 F.2d 784; *In re U.S. Financial, Inc.* (9th Cir.1980), 648 F.2d 515; *In re Stirling Homex Corp.* (2d Cir.1979), 579 F.2d 206.) Accordingly, we would distinguish the authorities relied on by the circuit judge in this case, which do not speak to claims of defrauded shareholders. See *Teltronics* (funds held by State attorney general as fraudulently obtained from consumers did not become part of bankrupt's estate; no shareholder claims involved); 11 U.S.C. § 541(d) (Supp. IV 1986) ("Property in which the debtor holds

537 N.E.2d 775 Page 8
127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446, 57 USLW 2586
**(Cite as: 127 Ill.2d 434, 537 N.E.2d 775, 130 Ill.Dec. 446)**

* * * only legal title and not an equitable interest, such as a mortgage secured by real property, * * * becomes property of the estate * * * only to the extent of the debtor's legal title to such property * * * ").

Given our result here, we need not consider the shareholders' request, by way of cross-relief, for prejudgment interest. For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

WARD, CLARK and CALVO, JJ., took no part in the consideration or decision of this case.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.