Slip Copy                                                                                                      Page 1
2004 WL 3090181 (Ohio App. 10 Dist.), 2004-Ohio-7193
**(Cite as: 2004 WL 3090181 (Ohio App. 10 Dist.))**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.


Court of Appeals of Ohio, Tenth District, Franklin County.
Ann H. Womer BENJAMIN, Superintendent of the Ohio Department of Insurance, in
Her Capacity as Liquidator, Plaintiff-Appellee,
v.
CREDIT GENERAL INSURANCE CO. et al., Defendants-Appellees,
(Sean G. LOGAN, Chapter 11 Trustee of the PRS Insurance Group, Appellant).
No. 03AP-1117.

Dec. 30, 2004.

Appeal from the Franklin County Court of Common Pleas.

Jim Petro, Attorney General; Dinsmore & Shohl, LLP, George H. Vincent, Stephen G. Schweller, Neal D. Baker and Amy M. Scholl, Special Counsel to the Ohio Attorney General, for plaintiff-appellee.

Benesch, Friedlander, Coplan & Aronoff, LLP, Jack Gregg Haught and Jennifer M. Turk; Bingham McCutchen, LLP, Harold S. Horwich, Thomas J. Hennessey and Stephen M. Hryniewicz, for appellant.


OPINION

SADLER, J.

(REGULAR CALENDAR)

**\*1** {¶ 1} This is an appeal by appellant, Sean G. Logan, Chapter 11 Trustee ("the trustee") of PRS Insurance Group, Inc. ("PRS") from the October 10, 2003 decision and entry of the Franklin County Court of Common Pleas, denying the trustee's "Motion for Order Requiring Return of Assets and Posting of Bond" filed January 22, 2003. In the trial court's decision, it refused to order that appellee, Ann H. Womer Benjamin ("the liquidator"), in her capacity as liquidator of Credit General Insurance Company ("CGIC"), convey to appellant over $20 million of assets now in the liquidator's hands and to which the

trustee claims entitlement outside the proof of claims procedures set forth in Chapter 3903 of the Ohio Revised Code. For the following reasons, we affirm.

{¶ 2} PRS was the parent company of a group of insurance-related concerns, including agencies, reinsurance companies and Ohio insurance companies subject to regulation by the Ohio Department of Insurance ("ODI"). CGIC was one of the Ohio insurance companies held by PRS. In June 2000, CGIC voluntarily entered into a confidential supervision consent order ("consent order"), pursuant to R.C. 3903.11. Under the consent order, ODI supervised the affairs of CGIC and had the authority to preapprove certain of CGIC's actions, including the making of payments exceeding a stated amount, and the entering into certain contracts. CGIC's officers, directors and employees maintained the day-to-day operations of the company. Pursuant to an addendum to the consent order, PRS and its other subsidiaries agreed to cooperate with ODI during the period of supervision. This included an agreement that certain transactions between PRS-held companies would not be undertaken without ODI's prior written approval.

{¶ 3} On November 27, 2000, ODI filed a motion to place CGIC in liquidation, pursuant to R.C. 3903.12. On January 5, 2001, the Franklin County Court of Common Pleas journalized a Final Order of Liquidation and Appointment of Liquidator, placing CGIC in liquidation pursuant to R.C. Chapter 3903 and appointing the liquidator. Nearly contemporaneously, PRS' creditors filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code, forcing PRS into bankruptcy proceedings. PRS subsequently agreed to an order for relief and converted the involuntary Chapter 7 case to a voluntary Chapter 11 case. The liquidator filed a proof of claim in the bankruptcy case, claiming that CGIC was owed over $45 million by PRS and several other of its subsidiaries. Later, the trustee instituted an adversary proceeding against CGIC, in which the trustee sought to recover the same assets that PRS seeks to obtain through its motion filed with the court of common pleas in the instant case.

{¶ 4} Though he was not a party to the present liquidation case, the trustee filed on January 22, 2003, a Motion for an Order Requiring the Return of

Slip Copy                                                                                      Page 2
2004 WL 3090181 (Ohio App. 10 Dist.), 2004-Ohio-7193
**(Cite as: 2004 WL 3090181 (Ohio App. 10 Dist.))**

Assets and Posting of Bond, through which he sought "return" of assets held by the liquidator and to which PRS claimed lawful entitlement outside the proof of claims procedure found in R.C. Chapter 3903. The trustee based his claim to "return" of the assets on Ohio's Fraudulent Transfer Act, codified in R.C. Chapter 1336; certain sections of the United States Bankruptcy Code; and on the common law theory of breach of fiduciary duty. Through his motion, the trustee also sought the requirement that the liquidator post a bond in the amount of $20 million and an order imposing upon the liquidator a constructive trust.

**\*2** {¶ 5} On October 10, 2003, the trial court journaled a decision and entry denying the motion. It is from this decision and entry that the trustee now appeals. He asserts three assignments of error for our review, as follows:

I. The trial court erred in denying PRS Insurance Group, Inc.'s Motion for Order Requiring Return of Assets and Posting of Bond, as amended on January 22, 2003 (the "Amended Motion") in its Decision and Entry Denying PRS Insurance Group, Inc.'s Amended Motion for Order Requiring Return of Assets and Posting of Bond Filed January 22, 2003 (the "Decision") by its ruling that the sole remedy of the PRS Group was to file a proof of claim as a creditor in the liquidation proceedings of Credit General Insurance Company.

II. The trial court erred in denying PRS Insurance Group, Inc.'s Motion for Order Requiring Return of Assets and Posting of Bond, as amended on January 22, 2003 (the "Amended Motion") in its Decision and Entry Denying PRS Insurance Group, Inc.'s Amended Motion for Order Requiring Return of Assets and Posting of Bond Filed January 22, 2003 (the "Decision") by its ruling that the PRS Group's Motion did not seek return of property from the liquidation of the estate of Credit General Insurance Company to which the PRS Group asserted ownership.

III. The trial court erred in denying PRS Insurance Group, Inc.'s Motion for Order Requiring Return of Assets and Posting of Bond, as amended on January 22, 2003 (the "Amended Motion") in its Decision and Entry Denying PRS Insurance Group, Inc.'s Amended Motion for Order Requiring Return of Assets and Posting of Bond Filed January 22, 2003 (the "Decision") by its ruling that the remedy of constructive trust was not available to the PRS Group on the basis of the allegations set forth in the Motion.

{¶ 6} The parties do not agree as to the standard of review that we are required to employ in passing upon the merits of the assignments of error. All three of the assignments of error raise purely legal issues. Thus, we apply a de novo standard of review. *Covington v. Ohio Gen. Ins. Co.* (Sept. 6, 2001), 10th Dist. No. 01AP-213, reversed on other grounds, 99 Ohio St.3d 117, 2003-Ohio-2720, 789 N.E.2d 213, citing *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh* (1998), 129 Ohio App.3d 255, 261, 717 N.E.2d 763.

{¶ 7} The trustee's first and second assignments of error are interrelated and will be addressed together. We begin by reviewing in detail the bases for the trustee's motion filed with the trial court, as well as that court's rationale for denying the same. The stated objects of the January 22, 2003 motion are, "a determination of whether the assets transferred as a result of ODI's actions are or should be assets of CGIC," "an accounting of the assets transferred from the PRS Group to CGIC," an "order imposi[ng] * * * a constructive trust on the assets transferred from the PRS [sic] to CGIC," an order to return to PRS "all assets transferred from the PRS Group to CGIC or damages of corresponding value," and an order "to post an initial bond in the amount of $20 million," plus interest, costs and attorneys fees.

**\*3** {¶ 8} The trustee alleged that funds and assets rightfully belonging to PRS had been retained by, or unlawfully transferred, sold, assigned, relinquished, directed or allocated to, CGIC. The trustee alleged that various persons or entities effected these transfers, including PRS itself, PRS subsidiary PRS Enterprises, Inc ., a vendor called Flight Options, Inc., ODI, and former CGIC director and officer Robert Lucia.

{¶ 9} The trustee's stated "theories of recovery" against the liquidation estate were Sections 542, 544, 547, 548 and 550 of the United States Bankruptcy Code; the Ohio Fraudulent Transfer Act; and common law breach of fiduciary duty. The trustee brought his motion pursuant to paragraph 18 of the Final Order of Liquidation and Appointment of Liquidator ("liquidation order") journaled January 5, 2001, which states:

[n]o civil action shall be commenced against Defendant CGIC or the Liquidator, whether in this state or elsewhere, nor shall any such existing actions be maintained or further prosecuted after the entry of this Order. Notwithstanding the preceding sentence or any other provision of this Order, the Intervenors or any other party claiming property interests in property held by the Liquidator may file a motion, without filing a proof

Slip Copy                                                                                                Page 3
2004 WL 3090181 (Ohio App. 10 Dist.), 2004-Ohio-7193
**(Cite as: 2004 WL 3090181 (Ohio App. 10 Dist.))**

of claim, with the Court for the purpose of determining whether the Court has or should exercise jurisdiction and/or whether any property held by the Liquidator is or should be an asset of CGIC.

{¶ 10} In response, the liquidator argued that Ohio's Liquidation Act provides the sole means of recovery against an insolvent insurer in liquidation, and bars fraudulent transfer claims, claims under the United States Bankruptcy Code, and any other theories of recovery outside of the statutory proof of claims process found in the Liquidation Act.

{¶ 11} In its decision denying the trustee's motion, the trial court found that paragraph 18 of the liquidation order:

is clearly intended to provide a means for individuals claiming title to property that is in the possession of the Liquidation Estate to recover their property before it is counted as an asset of the Liquidation Estate and is liquidated to pay off other creditors. For instance, if an employee of CGIC had purchased his own chair for use in his office, he would not have to file a proof of claim seeking return of his chair, but instead, could file a motion pursuant to Paragraph 18.

Here, PRS is not seeking return of property that it holds clear title to. Rather, it is claiming ownership of funds exceeding $20 million under various theories of recovery, including that the funds were improperly transferred during the bankruptcy preference period or were obtained through fraud or a breach of fiduciary duty. These are not the types of disputes that were intended to be resolved through a motion under Paragraph 18 of the Liquidation Order. The liquidation process would be completely circumvented if PRS were allowed to do so.

**\*4** (October 10, 2003 Decision and Entry, 3-4.)

{¶ 12} The trustee disagrees with the trial court's characterization of paragraph 18, and argues that the language of the paragraph clearly permits the bankruptcy estate to assert a claim having priority over those of CGIC's general creditors; or, more precisely, the trustee argues that by virtue of CGIC's so-called breach of fiduciary duty, PRS is entitled to circumvent the proof of claims process entirely. The liquidator contends that this court should leave to the trial court's discretion the manner in which that court's own order is interpreted. We reject the arguments of both parties on this issue.

{¶ 13} We perceive no need for interpretation of

paragraph 18 because Ohio's insurance liquidation statutory scheme mandates that title to the assets the trustee seeks vested in the liquidator at the time of her appointment. Pursuant to R.C. 3903.18, upon her appointment by the court, the liquidator of an insolvent insurance company, "forthwith * * * take[s] possession of the assets of the insurer * * * [and is] vested by operation of law with the title to all of the property * * * of the insurer ordered liquidated, wherever located, as of the entry of the final order of liquidation." R.C. 3903.18(A).

{¶ 14} "Upon issuance of the order, the rights and liabilities of any such insurer and of its creditors, policyholders, shareholders, members, and all other persons interested in its estate shall become fixed as of the date of entry of the order of liquidation," except with respect to certain types of claims not applicable under the facts herein. [FN1] R.C. 3903.18(B). R.C. 3903.57 provides, "[d]uring the pendency in this or any other state of a liquidation proceeding, whether called by that name or not, no action or proceeding in the nature of an attachment, garnishment, or levy of execution shall be commenced or maintained in this state against the delinquent insurer or its assets."

    FN1. See R.C. 3903.17 and 3903.37.

{¶ 15} The latter two statutory provisions represent the codification of the common law doctrine known as "in custodia legis," which means "in the custody of the law." [FN2] This doctrine exempts funds held by the courts or an arm or agent of the court, from orders of garnishment, execution, attachment or distribution. This includes funds held by an executor/administrator of a decedent's estate, a court-appointed receiver for a corporation, the liquidator in a bank liquidation, a court trusteeship for funds held by a sheriff after sale of property before a petition in bankruptcy is filed, and the liquidator for an insolvent insurance company. *See Deutsch v. Harris* (Mar. 16, 1989), 2nd Dist. No. 9008.

    FN2. Black's Law Dictionary (7 Ed.Rev.1999) 771.

{¶ 16} That the doctrine of in custodia legis has been incorporated into Ohio's insurance liquidation statutory scheme evidences an intent by the General Assembly that the remedies available thereunder be the exclusive remedies available to one claiming entitlement to any portion of the liquidation estate-- that is, any funds to which the liquidator has legal title as of the entry of the final order of liquidation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The funds that the trustee seeks herein are included in the CGIC liquidation estate because the liquidator took legal title to them upon being appointed. Thus, the trustee is limited to the proof of claims process contained in R.C. 3903.35, et seq., in his pursuit of funds allegedly due to PRS from the insolvent insurer. This is true whether or not the trustee asserts legal title to the funds he seeks.

**\*5** {¶ 17} The fact that the trustee alleges that PRS' losses are the result of tortious activity does not change this result. "The purpose of sections 3903.01 to 3903.59 of the Revised Code is the protection of the interests of insureds, claimants, creditors, and the public generally \* \* \*." R.C. 3903.02(D). On the facts as alleged in the trustee's motion, PRS was in a far better position to prevent the alleged tortious activity than were CGIC's insureds, claimants and creditors, and the general public.

{¶ 18} For the foregoing reasons, the trustee's first and second assignments of error are overruled.

{¶ 19} In his third assignment of error, the trustee argues the trial court erred in refusing to impress a constructive trust upon the liquidator and in favor of the trustee in the amount of the monies he seeks. For the following reasons, we find this assignment of error to be without merit.

{¶ 20} We note initially that, nowhere in Chapter 3903 of the Ohio Revised Code does the code exclude from the liquidation estate property held by the liquidator subject to a constructive trust. R.C. 3903.01 defines the "assets" of the insolvent insurer broadly, including "all property, real and personal, of every nature and kind whatsoever or any interest therein." R.C. 3903.01(B).

{¶ 21} A constructive trust is an equitable remedy that may be used "when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Cosby v. Cosby,* 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516, at ¶ 17, citing *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293. (Citation omitted.) The Supreme Court of Ohio has also held:

Where a right is statutory it should not be extended beyond the scope of the statute, however inequitable the result may seem. \* \* \* "Equity follows the law, and cannot be invoked to destroy or supplant a legal right." *In re Dickey* (1949), 87 Ohio App. 255, 264, 94 N.E.2d 223. When the rights of parties are clearly defined and established

by law (especially when the source of such definition is through constitutional or statutory provision) the maxim "equity follows the law" is usually strictly applied.

*Civil Service Personnel Assoc., Inc. v. City of Akron* (1976), 48 Ohio St.2d 25, 27, 2 O.O.3d 98, 356 N.E.2d 300. (Citations omitted.)

{¶ 22} In other words, where a statutory scheme clearly defines the rights and provides the remedies of persons and entities asserting claims to any portion of assets, the legal title to which have been fixed in the liquidator of an insolvent insurer, such statutory rights and remedies will be exclusive, except in cases where the applicable statutes will not provide a remedy, which situation we do not perceive here. "Equity will not suffer a wrong to be without a remedy," but "this appealing pronouncement must endure its limitations in the interests of reasonable order." Ibid.

**\*6** {¶ 23} The "reasonable order" wielding force here is the primary goal of the insurance liquidation scheme, as stated in R.C. 3903.02(D); that is, the protection of the interests of insureds, claimants, creditors, and the public generally. A constructive trust is fundamentally at odds with this goal because it elevates one claim (which is all one seeking a constructive trust really has) above all other claims and thwarts the policy of proportional distribution of the assets in the liquidator's hands. Thus, because the legislature has provided a comprehensive statutory scheme governing the distribution from an insolvent insurer's estate, equitable relief different from the relief provided by statute is not available to the trustee. This result is not influenced by the manner in which PRS may have found itself in the position of a creditor of CGIC. As the United States Court of Appeals for the Sixth Circuit explained, in refusing to impress a constructive trust upon a trustee in bankruptcy:

Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor. Ratable distribution among all creditors justifies the Code's placement of the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests \* \* \* so as to maximize the value of the estate. To a party defrauded by the debtor, incorporating the proceeds of fraud in the debtor's estate may seem like allowing the "estate to benefit from property that the debtor did not own." But \* \* \* "allowing the estate to 'benefit from property that the debtor

2004 WL 3090181 (Ohio App. 10 Dist.), 2004-Ohio-7193
**(Cite as: 2004 WL 3090181 (Ohio App. 10 Dist.))**

did not own' is exactly what the strong-arm powers are about: they give the trustee the status of a bona fide purchaser for value, so that the estate contains interests to which the debtor lacked good title." The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.

*In re Omegas Group, Inc.* (C.A.6, 1994), 16 F.3d 1443, 1452-1453. (Citations omitted.)

{¶ 24} The trial court in the present case correctly concluded that the equitable remedy of a constructive trust is not available to the trustee. Accordingly, the trustee's third assignment of error is overruled.

{¶ 25} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

PETREE and BROWN, JJ., concur.

2004 WL 3090181 (Ohio App. 10 Dist.), 2004-Ohio-7193

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.