

704 S.W.2d 1  
704 S.W.2d 1  
**(Cite as: 704 S.W.2d 1)**

Page 1

Supreme Court of Tennessee,
at Nashville.
John C. NEFF, Commissioner of Commerce and
Insurance, Appellee,
v.
CHEROKEE INSURANCE CO., in Receivership,
v.
PINE TOP INSURANCE CO. and Pine Top
Insurance Co., Limited, Appellants.

Jan. 27, 1986.

Commissioner of Commerce and Insurance placed insurance company into receivership and filed interim plan of rehabilitation. Second insurance company objected to classification of claims from reinsurance agreements as those of general creditors, which had lower priority than claims of direct policyholders. The Equity Court, Davidson County, Robert S. Brandt, J., held that direct policyholders had priority over other creditors, including those with claims from reinsurance agreements, and second insurance company appealed. The Supreme Court, Drowota, J., held that a contract or treaty of reinsurance was not insurance policy for purposes of determining priority of claims to assets of insolvent insurance company.

Affirmed.

West Headnotes

**[1] Statutes** 190
361k190 Most Cited Cases
While unambiguous statute does not require resort elsewhere than face of statute to ascertain legislative intent, this principle of construction cannot relieve Supreme Court of essential task of saying what law means, particularly in case of first impression.

**[2] Insurance** 3590
217k3590 Most Cited Cases
  (Formerly 217k675.5)
Legislature intends Title 56, dealing with insurance, primarily to benefit direct policyholders as opposed to reinsurance promissees. T.C.A. § 56-1-101 et seq.

**[3] Insurance** 1414
217k1414 Most Cited Cases
  (Formerly 217k675.5)
Contract or treaty of reinsurance is not an insurance policy for purposes of T.C.A. § 56-9-127(3), which allows policyholders priority in claims to assets of insolvent insurance companies; only direct policyholders or their third-party beneficiaries are included.

**\*1** Michael E. Evans, Nashville, for appellants.

William B. Hubbard, Nashville, for appellee.

OPINION

DROWOTA, Justice.

This case presents an issue of first impression in Tennessee, requiring this Court to construe the language of T.C.A. § 56-9-127 (1980). This statute establishes the priority accorded to claims in the distribution of assets of an insolvent insurance company. The sole issue raised is whether, in the rehabilitation of an insurance company by the Commissioner of Commerce and Insurance, claims made by other insurance companies under contracts of reinsurance are classified as claims for benefits under policies and for losses incurred, or are the claims of general creditors with the lowest priority. The statute at issue is contained within a comprehensive regulatory scheme regarding insurance and must be considered in light of the public policies that prompted the development of this statutory framework.

The appellants in this case are Pine Top Insurance Company and Pine Top Insurance Company, Limited (referred to collectively as Pine Top), which operate in the United States and the United Kingdom respectively. Pine Top had entered into various reinsurance agreements with Cherokee Insurance Company (Cherokee), covering a percentage of Pine Top's previously incurred insurance obligations. Subsequently, in July 1984, the Commissioner of Commerce and Insurance (Commissioner) placed Cherokee into receivership. As a **\*2** result, acting through a Special Deputy Commissioner as Receiver, the Commissioner filed a Petition for Approval of Interim Plan of Rehabilitation. This Interim Plan was approved by the Davidson County Chancery Court on August 8, 1984, providing that Cherokee pay the claims for benefits, for losses incurred, and for unearned premiums before those of general creditors,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

704 S.W.2d 1 Page 2
704 S.W.2d 1
**(Cite as: 704 S.W.2d 1)**

pursuant to T.C.A. § 56-9-127: [FN1]

> FN1. Each section of the statute is referred to as a class of claimants, e.g., § 56-9-127(3) is Class 3.

56-9-127. *Priority of claims.*--The following priority of claims in the distribution of assets is hereby established:
(1) Claims for cost of administration and conservation of assets of the unsurer[sic];
(2) Compensation actually owing to employees other than officers of an insurer, for services rendered within three (3) months prior to the commencement of a proceeding against the insurer under this chapter, but not exceeding one thousand dollars ($1,000) for each employee and in the discretion of the commissioner may be paid as soon as practicable after the proceeding has been commenced. Such priority shall be in lieu of any other similar priority which may be authorized by law as to wages or compensation of such employees;
(3) Claims for benefits under policies and for losses incurred, including claims of third parties under liability policies, but excluding claims of other insurers for subrogation and claims for payments and settlements under uninsured motorist coverages;
(4) Claims for unearned premiums;
(5) Claims of general creditors, including claims of other insurers for subrogation and claims for payments and settlements under uninsured motorist coverages.

The Interim Plan classified direct policyholders of Cherokee in Classes 3 and 4, but all claims arising from reinsurance agreements were placed in Class 5. Consequently, on April 4, 1985, Pine Top filed a Motion to Modify or Set Aside Interim Plan of Rehabilitation, arguing that its claims should have been given Class 3 priority as claims under policies of reinsurance for losses incurred. [FN2] This argument was based on its contention that reinsurance contracts are insurance policies for the purposes of T.C.A. § 56-9-127. Citing the consistent and unchallenged treatment of reinsurance by the Commissioner under the statute, as well as the pre-enactment and legislative history of T.C.A. § 56-9-127, the Chancellor found that this provision of Title 56 had been amended for the express purpose of allowing direct policyholders priority over other creditors. In part, the trial court based its decision on the relative expertise of direct policyholders, compared to that of other insurance companies, in making insurance purchasing choices. The motion of Pine Top was accordingly denied on May 7, 1985. The order became final and, pursuant to T.C.A. § 56-9-103(e), a direct appeal to this Court was brought by Pine Top.

> FN2. Pine Top is owed over $850,000 from Cherokee under these reinsurance agreements.

I

[1] Because we are faced with an issue of first impression under this statute, we look to the place occupied by T.C.A. § 56-9-127 in the comprehensive statutory scheme involved. We are also guided by the rules of statutory construction found in the case law of this State. We recall at the outset that "[a]s a general proposition Code provisions *in pari materia* ... must be construed together, and the construction of one, if doubtful, may be aided by the consideration of the words of and legislative intent indicated by the others." Gallagher v. Butler, 214 Tenn. 129, 137, 378 S.W.2d 161, 164 (1964) (citation omitted). Additionally, this Court has stated that "[t]he obligation of a court in construing a statute is to give effect to the statutory purpose. When the proper application of a statute is not entirely clear, the first inquiry is to ascertain the general legislative intent." State by Lockert v. Knott, 631 S.W.2d 124, 126 (Tenn.1982). Moreover, we have consistently **\*3** held that "in construing a statute, all sections are to be construed together in light of the general purpose and plan, evil to be remedied, and object to be attained...." State v. Netto, 486 S.W.2d 725, 729 (Tenn.1972). See also Westinghouse Electric Corp. v. King, 678 S.W.2d 19 (Tenn.1984). While we recognize that an unambiguous statute does not require resort elsewhere than the face of the statute to ascertain legislative intent, *see, e.g.,* Roddy Manufacturing Co. v. Olsen, 661 S.W.2d 868 (Tenn.1983), this principle of construction cannot relieve us of the essential task of saying what the law means, particularly in a case of first impression. *See, e.g.,* Weaver v. Woods, 594 S.W.2d 693, 695 (Tenn.1980).

The statute in question is part of a broadly conceived scheme for the regulation of insurance in Tennessee. The appellant, Pine Top, has cited many provisions of Title 56 for the proposition that contracts of reinsurance are treated as insurance policies within this statutory framework. Pine Top argues that the language of T.C.A. § 56-9-127(3) provides no principled basis upon which to exclude reinsurance contracts from Class 3 under the maxim of statutory construction that if one exception is expressed then

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

704 S.W.2d 1 Page 3
704 S.W.2d 1
**(Cite as: 704 S.W.2d 1)**

others are excluded (*expressio unius est exclusio alterius*). Pine Top then argues that reinsurance is referred to throughout Title 56, citing T.C.A. § § 56-1- 102(4), 56-1-404, 56-2-207, 56-2-208, 56-2-209, and a number of others as examples of the Legislature's intent to treat reinsurance contracts in the same manner as direct insurance policies. Nevertheless, not only do we look beyond these isolated sections of Title 56 to ascertain the policy involved, but we also are guided by T.C.A. § 1-3-103 (1985), which provides that conflicts among Code provisions are to be resolved so that each provision prevails as to subjects within the special purview of the relevant chapter or title. Moreover, as to the policy motivating the regulatory scheme, which is found consistently in other states as well as in Tennessee, Richards writes in *Insurance,* § 39, that

> [t]he emphasis [of insurance regulation] has been placed simply upon protecting the little policy- holder who cannot tell when he is charged too much for his insurance; since he does not investigate his purchase too carefully nor could he determine if a given insurer has the capacity, i.e., the solvency, to perform in the future when the insured event occurs, the States have established regulatory bodies to secure that necessary measure of protection.

[2] Further, the Legislature stated expressly in T.C.A. § 56-1-102 that "[t]he ... definitions apply in chapters 1 [through] 4, 7, 10 and 11 of this title," which means that they do not apply in Chapter 9, a provision of which we are required to construe here, and no definition of reinsurance appears in T.C.A. § 56-2-201 or in any other provision of Title 56. This is so because reinsurance is more in the nature of a contractual device or business practice employed among insurance companies to spread their risks, than it is a policy of insurance for which a person or business bargains to obtain specific protection from a given risk. See T.C.A. § § 56-2-201; 56-7-101. *Cf.* T.C.A. 56-2-207. The definition of an insurance contract is found in T.C.A. § 56-7-101, but while it would perhaps otherwise encompass a reinsurance agreement, the express inclusion of or reference to reinsurance in a number of places without doing so in this definition implies its exclusion elsewhere for the purposes of Title 56 as a whole. Consistent with the presumption of the Legislature's knowledge of the subjects on which it acts, the Code simply and wisely recognizes and provides for the business practice of insurance companies in obtaining reinsurance contracts to spread their risks. *See, e.g.,* T.C.A. § § 56-1-102(4); 56-1-404; 56-2-207; 56-2-208; 56-2-209; 56-5-301(5); 56-9-131(b)(8); 56-13-103(a)(2); 56-13-104; 56-13-122; 56-22-110; 56-23-104. Although referring specifically to what is now T.C.A. § 56-2-201, the rationale expressed by this Court in *Equitable Life Assurance Co. v. Odle,* 547 S.W.2d 939 (Tenn.1977), may be generalized to this **\*4** setting as well: "It appears reasonable to conclude that the Legislature was concerned only with defining all of the kinds of insurance in the context of determining insurance company qualifications to insure and the granting of authority to engage in writing one or more kinds of insurance." *Id.* at 940. Thus, the Legislature intends Title 56 primarily to benefit direct policyholders as these agreements are defined in that title.

In further support of this policy, for example, by providing in § 56-2-207 that no credit would be allowed to any ceding insurer for reinsurance because of the insolvency of the ceding insurer, the Legislature plainly intends that the assets of an insurance company should be preserved for the benefit of direct policyholders over reinsureds. This section also demonstrates the Legislature's recognition that reinsurance is treated as separate and distinct from direct insurance. Pine Top's argument that the plain language of T.C.A. § 56-9-127(3) does not permit any other construction than that reinsureds are on the same footing as direct insureds, therefore, necessarily assumes that the Legislature intended reinsurance to be regulated *ab initio* under the entire statutory scheme of Title 56. This is simply not the case. Accordingly, we will not address Pine Top's arguments regarding the place of reinsurance in the statutory scheme statutory provision by statutory provision, because, after a review of the entire Title, we are convinced that the intent of the Legislature has always been to deal with the regulation of direct policies of insurance for the benefit of the general public. We are further reinforced in this conclusion by a review of the case law available in Tennessee on the practice of reinsurance, of which the Legislature is presumed to have knowledge. "The Legislature is presumed to have knowledge of the state of the law on the subject under consideration at the time it enacts legislation." *Equitable Life Assurance Co. v. Odle, supra,* at 941 (citations omitted).

II

[3] Apparently, the earliest Tennessee case to which we have been cited and which we are able to discover regarding reinsurance is *Royal Insurance Co. v. Vanderbilt Insurance Co.,* 102 Tenn. 264, 52 S.W. 168 (1899). This Court has recognized since then that "[a] contract of reinsurance is peculiar in its

704 S.W.2d 1                                                                                                           Page 4
704 S.W.2d 1
**(Cite as: 704 S.W.2d 1)**

character, and differs from the ordinary policy of insurance.... It is simply an agreement to indemnify the assured ... against a risk assumed by the latter in a policy issued to a third party." 102 Tenn. at 267, 52 S.W. at 169. *Royal Insurance Co.* was later cited in *Ruohs v. Traders Fire Insurance Co.,* 111 Tenn. 405, 78 S.W. 85 (1903), for precisely this proposition. In *Ruohs,* the issue was whether the contract involved there would be construed as "a mere technical reinsurance contract," 111 Tenn. at 424, 78 S.W. at 90, or as an exception to the general rule that reinsurance is not an assumption of the risk represented by the original insurance policy of the reinsured with an unrelated third party. The *Ruohs* Court found that the contract involved there was not an ordinary contract of reinsurance but rather an assumption of the liabilities of one insurance company by another, creating the rights of third party beneficiaries in favor of the original insureds of the ceding insurance company. 111 Tenn. at 428, 78 S.W. at 90. [FN3] *Cf. Finley v. United States Casualty Co.,* 113 Tenn. 592, 83 S.W. 2 (1904). In an earlier case, this Court also recognized the motivating policy of insurance regulation, stating that "[p]rotection of policy holders and revenue of the State **\*5** are the controlling objects of the [Insurance] Act, the former being paramount...." *North British & Mercantile Insurance Co. v. Craig,* 106 Tenn. 621, 645, 62 S.W. 155, 160 (1901). As an expression of public policy on insurance, nothing we have found or to which we have otherwise been directed indicates that this policy has not been followed by the Legislature in every enactment and amendment of Title 56.

> FN3. We note that the overriding concern of the Ruohs Court seemed to have been to protect the original policyholders in a situation in which one insurance company had deprived its outstanding policyholders of the assets needed to pay their claims by assigning its assets to another insurance company under an "alleged contract of reinsurance." 111 Tenn. at 428- 429, 78 S.W. at 91. This might well result in this case and others if Pine Top's position were adopted, which would be in clear conflict with the express purpose of the 1973 Amendment of § 56-9-127.

The Tennessee Court of Appeals has also spoken on reinsurance practices in *Commercial Casualty Insurance Co. v. Columbia Casualty Insurance Co.,* 22 Tenn.App. 656, 125 S.W.2d 493 (1938). The distinction of original insurance from reinsurance, consistent with the foregoing cases, was made by the Court of Appeals as well, again citing *Royal Insurance Co., supra,* for this proposition. 22 Tenn.App. at 661-662, 125 S.W.2d at 496. Furthermore, in recognizing the industry custom and expertise concerning reinsurance, the Court of Appeals noted:

> Large insurance companies having much experience do not do business of [such] magnitude in this manner. It would be much out of the ordinary course of business for a large insurance company to enter into a verbal agreement for reinsurance of policies involving [large] risks ... before it had inspected the risks or had information about the policy holders.

22 Tenn.App. at 663-664, 125 S.W.2d at 497. This ability to fend for themselves is not ordinarily within the grasp of direct policyholders.

Both the Commissioner and Pine Top have cited a number of cases from other jurisdictions for support of their respective positions. We have found it unnecessary, however, to delve too deeply into these cases as we find that the case law and statutory scheme, taken together, adequately express the law and policy on the status of reinsurance contracts in Tennessee. We mention that where we have considered these cases from other jurisdictions, we have concluded that our reasoning is substantially supported. *See, e.g., Foremost Life Insurance Co. v. Department of Insurance,* 274 Ind. 181, 409 N.E.2d 1092 (1980) (construing a statute similar to T.C.A. § 56-9-127 with the same result as we reach here); *Stradley v. Southwestern Life Insurance Co.,* 341 S.W.2d 195 (Tex.Civ.App.1960); *Stickel v. Excess Insurance Co. of America,* 136 Ohio St. 49, 23 N.E.2d 839 (1939) (holding that the Ohio insurance statutes applied only to direct insurance policies); *In re Liquidation of General Indemnity Corp. of America,* 274 N.Y. 510, 10 N.E.2d 523 (N.Y.1937); *Cunningham v. Republic Insurance Co.,* 127 Tex. 499, 94 S.W.2d 140 (Tex.Comm.App.1936); *Aetna Casualty & Surety Co. v. International Re-Insurance Corp.,* 117 N.J.Eq. 190, 175 A. 114 (N.J.Chan.1934) (finding that, unlike insurance companies, ordinary citizens who purchase original policies would have little realistic opportunity to evaluate the insurance policy, the insurance company, or its financial responsibility, and thus needed the protection of the insurance statutes). *But cf. Maurer v. International Re-Insurance Corp.,* 32 Del.Ch. 447, 86 A.2d 360 (Del.1953) (holding that reinsurance claims would be paid from a trust whose terms specifically embraced such claims but apparently recognizing that another

result might be reached on other facts).

### III

In addition to the case law, the long-standing practice of the Commissioner in insurance company liquidation, rehabilitation, supervision, and oversight also supports our conclusion. If any other result were intended by the Legislature, it has not restrained the construction placed upon these statutes by the Commissioner and it is presumed to know how the statutory scheme has been interpreted and applied. *See, e.g., Equitable Life Assurance v. Olle, supra; Gallagher v. Butler, supra.* In *North British & Mercantile Insurance Co. v. Craig, supra,* the Legislature was found to have "intended, in the interest of policy holders in the State, to confer upon the Insurance Commissioner plenary power [to protect the policyholders from violations **\*6** of] any legal obligation affecting their rights." 106 Tenn. at 645, 62 S.W. at 160. In furtherance of the fundamental policy of Title 56, T.C.A. § 56-9-131(b)(8)(1980) provides that an insurer subject to delinquency proceedings may not, during the period of supervision, enter into any new reinsurance contract or treaty without the permission of the Commissioner. T.C.A. § 56-9-131(a)(2) also allows the Commissioner to exercise reasonable discretion in determining whether "any domestic insurer is in such condition as to render the continuance of its business hazardous *to the public or to holders of its policies or certificates of insurance* ..." (emphasis added). As this section is part of the chapter we are here construing, it demonstrates not only the underlying policy of Chapter 9 of Title 56, but it also expressly distinguishes insurance from reinsurance for the purposes of this chapter, even if for no others. Clearly, the intention of the Legislature has been to protect direct policyholders and not reinsurance promissees.

The 1973 Amendment that created T.C.A. § 56-9-127(3) was passed in furtherance of the basic policy of protecting direct policyholders, which policy is demonstrated repeatedly not only in Chapter 9 but throughout Title 56. We will not construe one provision of a statutory scheme in a way that "would operate to impair, frustrate or defeat the object" of a comprehensive regulatory framework. *Gallagher v. Butler,* 214 Tenn. at 147, 378 S.W.2d at 169 (citation omitted). *See also Westinghouse Electric Corp. v. King, supra; State v. Netto, supra.* The 1973 Amendment was made precisely because insurance companies' claims had diluted the assets of an insolvent insurer to the detriment of the direct policyholders. Representative Longley stated that policyholders were to be placed "in a preferential position" to general creditors. [FN4] Regardless, Rep. Longley's remarks on the floor of the Legislature are not of themselves the sole expression of the entire Legislature's intent; rather, that intent is expressed by and to be gathered from the statutory scheme as a whole and into which the amendment or statute fits. The Legislature has made the judgment that direct policyholders are to be protected over reinsured insurance companies. This is particularly borne out by the statutes in Title 56, since if a reinsurance contract is not a policy, then it merely represents a contractual claim that has Class 5 priority under T.C.A. § 56-9-127.

> FN4. Legislative Journal, 1973 Tenn. Public Acts, Ch. 63, § 1, House Debate, April 5, 1973, Representative Longley, House of Representatives, House Bill 312, disc no. H-104 (Senate Bill 313, disc No. S-072, April 4, 1973), 88th General Assembly.

In addition, contracts of reinsurance are not subjected to the strictures and requirements of most of the insurance statutes. These statutes regulate and tax direct policy contracts and specify the reserves that insurance companies must maintain for policies issued in Tennessee, but the State does not generally regulate reinsurance contracts and imposes no tax upon the premiums paid for them, although the statutes do place certain financial obligations on companies that seek credit under reinsurance agreements for losses or unearned premiums on their liability. In the affidavit of Mr. Paul Tidwell, a former employee of the Department of Commerce and Insurance for many years, he stated that T.C.A. § 56-4-204 has never been administratively interpreted to include gross premiums paid to reinsurers because reinsurance has never been considered a policy contract for the purposes of Title 56 generally. Moreover, if reinsurers want the protections and advantages of the statute, they must also assume the liabilities and obligations of these provisions, including the attendant tax burden. To do otherwise would place reinsurance in a wholly preferred position to direct policies, which would be clearly contrary to the statutory scheme of Title 56 as well as the long-standing administrative interpretation of these statutes. The Commissioner's interpretation is not "palpably erroneous" and has been unchallenged for a substantial period. *See Gallagher v. Butler,* 214 Tenn. at 142, 378 S.W.2d at 166. Since the statutes completely **\*7** regulate direct policies, but embrace reinsurance merely incidentally, only direct policyholders or their third party beneficiaries are

704 S.W.2d 1                                                                                                                  Page 6
704 S.W.2d 1
**(Cite as: 704 S.W.2d 1)**

included in Class 3 under T.C.A. § 56-9-127 to serve the fundamental purpose and policy of Title 56 and Chapter 9 to insure that direct insureds receive what they bargained for and relied upon in purchasing direct insurance policies. *Cf. North British & Mercantile Insurance Co. v. Craig, supra*; *Finley v. United States Casualty Co., supra*; *Commercial Casualty Insurance Co. v. Columbia Casualty Insurance Co., supra.*

IV

Given the administrative interpretation of T.C.A. § 56-9-127, the evident purpose of Title 56 as a whole as well as § 56-9-127 in particular, and the case law in Tennessee regarding reinsurance, Pine Top's contention cannot be supported since reinsurance has consistently been distinguished from direct insurance. This distinction is not made by the courts alone, since it is also the custom of the industry. *See* Appleman, 13A *Insurance Laws and Practice,* § 7686; Richards, *Insurance,* § 36. Reinsurance is mentioned in the statutes only as being incidental to the primary business of insurance companies in writing policies of direct insurance; thus, the words of T.C.A. § 56-9-127 are clear and unambiguous and apply only to direct policyholders and their third party beneficiaries. As this Court has recently stated:

> The primary purpose of statutory construction is to ascertain and give effect ... to the intention or purpose of the Legislature as expressed in the statute.... The Court should not lift one word or clause from a statute and construe it alone without reference to the balance of the statute.... Statutes relating to the same subject matter should be construed together.

*Westinghouse Electric Corp. v. King,* 678 S.W.2d at 23 (citations omitted). Further, "[i]t is the duty of this Court in construing an Act to reconcile different portions giving them a consistent meaning rather than otherwise. *Scales v. State,* 181 Tenn. 440, 181 S.W.2d 621 (1944)." *Gallagher v. Butler,* 214 Tenn. at 137, 378 S.W.2d at 164. To include reinsurance where the Legislature has not even implied throughout the entire statutory scheme of Title 56 that reinsurance would be included, unless expressly embraced (as it is in a number of provisions), would create an inconsistency where none otherwise existed. Given the clear policy of Tennessee in the case law and the statutory scheme, we hold that a contract or treaty of reinsurance is not an insurance policy for the purposes of T.C.A. § 56-9-127. Accordingly, we affirm the judgment of the Davidson County Chancery Court. Costs are taxed to the Appellants.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.

704 S.W.2d 1

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.